No. 03-609

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 129

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

WILLIAM LESTER RARDON,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead, Cause No. DC 97-64A
The Honorable Deborah Kim Christopher, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

        Sean D. Hinchey, Hinchey & Hinchey, Kalispell, Montana

      For Respondent:

        Honorable Mike McGrath, Montana Attorney General, Jennifer Anders, Assistant Attorney General, Helena, Montana; Ed Corrigan, Flathead County Attorney, Dan Guzynski, Deputy County Attorney, Kalispell, Montana


Submitted on Briefs:  April 13, 2004

Decided:  May 26, 2005

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      William Lester Rardon (Rardon) appeals from the sentence imposed by the Eleventh Judicial District Court for the crime of sexual assault. We affirm the District Court. Rardon raises the following issues for our review:

¶2      1. Did the prosecutor breach the plea agreement?

¶3      2. Did Flathead County Attorney Ed Corrigan violate this Court's instructions on remand?

¶4      3. Did the sentence violate Rardon's right to due process?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶5      This is Rardon's third appeal from the sentence imposed by the Eleventh Judicial District Court. A detailed discussion of the facts regarding the first two appeals may be found in *State v. Rardon*, 1999 MT 220, 296 Mont. 19, 986 P.2d 424 (*Rardon I*), and *State v. Rardon*, 2002 MT 345, 313 Mont. 321, 61 P.3d 132 (*Rardon II*). In order to provide a context for the resolution of this appeal, we recount the pertinent facts from those proceedings.

¶6      Rardon was charged with one count of sexual intercourse without consent, and two counts of sexual assault. The victims of these offenses were two minors; Rardon's own daughters, D.N. and J.T. While Rardon pled not guilty at his arraignment, he subsequently entered into a written plea agreement with the State whereby he agreed to plead guilty to one count of sexual assault against his eldest daughter, D.N. In exchange, the State agreed to dismiss the other charges and recommend a sentence in conformity with the recommendation

2

resulting from the Sexual Offender Treatment Amenability Evaluation (SOTA Evaluation) and the Pre-Sentence Investigation Report (PSI Report) to be performed prior to sentencing. The District Court accepted Rardon's guilty plea, ordered a SOTA Evaluation and PSI Report, and dismissed the remaining charges.

¶7 The SOTA Evaluation recommended, *inter alia*, that Rardon be accepted into an outpatient treatment program on a probationary status without any term of years, to be completed in Great Falls according to the treatment standards of the Montana Sex Offender Treatment Association. The PSI Report, on the other hand, recommended that Rardon be sentenced to serve forty years at the Montana State Prison (MSP), with twenty years suspended. The PSI Report further recommended that Rardon remain ineligible for parole until he completed all available phases of the Sex Offender Treatment Program (SOTP) at MSP.

¶8 Rardon's first sentencing hearing was held in December of 1997 before the Honorable Ted O. Lympus. The State called Rardon's two daughters and his ex-wife to the stand where they expressed their fear of Rardon and their desire that he be incarcerated for the rest of his life. The State recommended that Rardon be sentenced to serve seventy years at MSP, and that he be ineligible for parole until he had served at least thirty years and completed all phases of the SOTP. The District Court sentenced Rardon to seventy-five years at MSP with fifteen years suspended, and provided that Rardon would not be eligible for parole until having served at least thirty-five years and completed all phases of the SOTP.

¶9      Rardon appealed the sentence and this Court reversed the District Court in *Rardon I*. In doing so, we concluded that the State had breached the plea agreement by recommending a sentence that was not in conformity with the recommendations of either the SOTA Evaluation or the PSI Report. *Rardon I*, ¶ 17. Consequently, we held that the District Court had abused its discretion when it failed to require the State to abide by the terms of the plea agreement. *Rardon I*, ¶ 17. We remanded with instruction that the District Court either allow Rardon to withdraw his guilty plea, or require specific performance of the plea agreement and order a new sentencing hearing before a different judge. *Rardon I*, ¶ 18. Rardon chose to have the plea agreement specifically performed. *Rardon II*, ¶ 9.

¶10     In March of 2000, a second sentencing hearing was held before the Honorable Katherine R. Curtis. The same Flathead County Attorney involved in the original sentencing proceeding, Mr. Ed Corrigan (Corrigan), represented the State. Again, Rardon's two daughters and his ex-wife testified at the proceeding, expressing their fear of Rardon and their desire that he be incarcerated for the rest of his life. While the prosecutor opined that Rardon deserved a lengthy sentence, he ultimately recommended that Rardon be sentenced to serve forty years at MSP with twenty years suspended, subject to the conditions set forth in the PSI Report. Rardon's court-appointed attorney, in accordance with Rardon's request, recommended a sentence of forty years with no time suspended. The District Court did not accept the proffered recommendations, but imposed a sentence of seventy-five years at MSP with twenty-five years suspended, and provided that Rardon would not be eligible for parole

4

until he had served at least half of the non-suspended sentence and completed all phases of the SOTP.

¶11 Rardon appealed the second sentence. In *Rardon II*, this Court reversed the District Court because the prosecutor had breached the plea agreement by aggressively eliciting testimony that was clearly intended to undermine the agreement and convince the District Court that the plea bargained sentence recommendation should not be accepted. *Rardon II*, ¶ 22. We stated that although the District Court had the statutory authority to impose a lengthy sentence, the court should have had the benefit of making that decision based on a good faith and fair presentation of the State's case. *Rardon II*, ¶ 25. Thus, we remanded with instructions that the District Court either allow Rardon to withdraw his guilty plea, or require specific performance of the plea agreement and order a new sentencing hearing before a different judge, with the State to be represented by a different prosecutor. *Rardon II*, ¶ 26. Rardon again chose to have the plea agreement specifically performed.

¶12 On June 30, 2003, a third sentencing hearing was held before the Honorable Deborah Kim Christopher. Pursuant to this Court's instructions in *Rardon II*, Corrigan did not participate. Instead, the State was represented by Flathead County Attorney Daniel Guzynski (Guzynski). Again, J.T. and Rardon's ex-wife both testified. D.N., the victim of the crime for which Rardon was convicted, did not appear at this portion of the proceeding. In order to provide her another opportunity to testify, the District Court continued the hearing until July 14, 2003, at which time she did appear and testify. The State recommended that Rardon be sentenced to serve forty years at MSP, with twenty years suspended, subject to the

5

conditions set out in the SOTA Evaluation and the PSI Report. Rardon's counsel recommended a sentence of thirty years, with fifteen years suspended. The District Court did not accept the proffered recommendations, but imposed a sentence of fifty years at MSP, with thirteen years suspended, and provided that Rardon would not be eligible for parole at any time during his sentence.

¶13 Rardon now appeals from the third sentence, arguing that: (1) the prosecutor again breached the plea agreement; (2) Flathead County Attorney Ed Corrigan violated this Court's instructions on remand in *Rardon II*; and (3) the sentence violated his right to due process. Upon these contentions, Rardon requests that we reverse the District Court and remand this matter with a recommendation that the court impose a sentence of forty years, with twenty years suspended.

## STANDARD OF REVIEW

¶14 In reviewing allegations of prosecutorial error, we employ a *de novo* standard, considering the prosecutor's conduct in the context of the entire proceeding. *Rardon II*, ¶ 15. Our review of the constitutional issue of due process involves a question of law, and our review of such questions is plenary. *In re Mental Health of K.G.F.*, 2001 MT 140, ¶ 17, 306 Mont. 1, ¶ 17, 29 P.3d 485 ¶ 17.

## DISCUSSION

¶15 *1. Did the prosecutor breach the plea agreement?*

¶16 Rardon argues that the prosecutor breached the plea agreement in two ways. First, Rardon argues that a breach occurred when the prosecutor elicited improper testimony from

D.N., J.T., and his ex-wife. The specific portions of testimony which Rardon designates as improper include accounts of the physical and sexual abuses which Rardon subjected his family to over a period of years, general testimony regarding Rardon's violent nature, and J.T.'s stated opinion that he should be "put away for a very, very long time." Rardon claims that the conduct referred to in this testimony "had nothing to do with the charge of sexual assault to which he plead guilty." Further, Rardon asserts, this testimony was improper because it was elicited for the purpose of inducing Judge Christopher to reject the State's recommended sentence and impose an increased sentence.

¶17     In determining a proper sentence, the sentencing judge may consider any relevant evidence relating to the nature and circumstances of the crime, the character of the defendant, the defendant's background and history, mental and physical condition, and any evidence the court considers to have probative force. *State v. Mason*, 2003 MT 371, ¶ 23, 319 Mont. 117, ¶ 23, 82 P.3d 903, ¶ 23. This includes evidence of other acts, even those resulting in acquittal or which are dismissed pursuant to a plea bargain agreement. *Mason*, ¶ 23. As well, it is entirely appropriate for a prosecutor to elicit testimony from the victims at a sentencing hearing, and for the victims to express their fears and feelings. *Rardon II*, ¶ 22. Moreover, we observe that nothing in the plea agreement between the State and Rardon limited the State's ability to present the testimony at issue. Thus, the fact that Rardon's abusive history and violent tendencies came out during the proceeding does not establish a breach of the plea agreement. Nor is a breach established by virtue of the fact that Rardon's daughter stated her opinion that he should receive a lengthy sentence. The portions of

7

testimony which Rardon complains of fit squarely within the parameters of acceptable evidence. As such, we conclude that the sentencing judge was entitled to consider this evidence in determining an appropriate sentence. Thus, we hold that the plea agreement was not breached by the mere introduction of this evidence.

¶18 A plea agreement is a contract between the State and a defendant which is subject to contract law standards. *Rardon II*, ¶ 18. The State may not retain the benefit of such an agreement while avoiding its obligation thereunder. *Rardon II*, ¶ 18. Indeed, prosecutors must meet "strict and meticulous standards of both promise and performance" in fulfilling such agreements. *Rardon II*, ¶ 18. As such, a prosecutorial violation of a plea agreement is unacceptable, even if made inadvertently in the good faith pursuit of a just result. *Rardon II*, ¶ 18.

¶19 Thus, although a prosecutor enjoys wide latitude in submitting evidence to a sentencing judge, the presentation of the State's case must be tempered by any obligations or restrictions created by way of a plea agreement. In Rardon's case, the plea agreement required the prosecutor to recommend a sentence in conformity with the recommendation resulting from the SOTA Evaluation and the PSI Report. This component of the agreement obligated the prosecutor to present the State's case in a way that would not undermine the recommendation he ultimately made to the sentencing judge. *Rardon II*, ¶ 22. A failure in this regard would constitute a breach of the plea agreement. *Rardon II*, ¶ 22. As we have previously noted, although a sentencing judge has the statutory authority to reject a plea

bargained sentencing recommendation, such a decision should be made pursuant to a good faith and fair presentation of the State's case. *Rardon II*, ¶ 25.

¶20    We hold that the prosecutor's presentation of the State's case did not undermine the plea bargained sentence recommendation. In doing so, we note that there are no hard and fast criteria to apply in making such a determination. *Rardon II*, ¶ 21. Rather, each case must be decided on its own unique facts. *Rardon II*, ¶ 21. Here, the testimony at issue was particularly relevant because it described conduct that was part of Rardon's pattern of abusive and violent behavior which was directly related to his crime of sexual assault, and was in fact facilitative of that offense. Further, this conduct occurred during the same time period in which Rardon committed the crime for which he was convicted. The prosecutor appropriately encouraged the witnesses to testify about their experiences so that the sentencing judge was properly informed in determining an appropriate sentence.

¶21    More importantly, however, the prosecutor did not use this testimony to undermine the State's sentence recommendation. In *Rardon II*, we held that the prosecutor had effectively undercut the plea agreement by repeatedly eliciting inflammatory testimony which was clearly intended to convince the sentencing judge that the plea bargained sentence recommendation should not be accepted. *Rardon II*, ¶¶ 19-22. For example, the prosecutor explained to a witness that if the State's recommended sentence were accepted, Rardon could be eligible for parole within just a few years. *Rardon II*, ¶ 19. Then the prosecutor asked the witness what she thought of the State's recommended sentence. *Rardon II*, ¶ 19. The witness, not surprisingly, opposed the recommendation. *Rardon II*, ¶ 19.

9

¶22 Here, however, nothing of that sort occurred, and Rardon's bare assertions to the contrary are unpersuasive. The fact that some testimony elicited in the third hearing was similar to that of the first and second hearings does not establish a breach of the plea agreement. Our review of the record leads us to conclude that none of the prosecutorial improprieties identified in the previous proceedings were present in the third sentencing hearing. Further, Rardon has not demonstrated that any other form of prosecutorial impropriety occurred. We hold that the prosecutor did not elicit improper testimony or undermine the State's recommended sentence. Thus, we hold that the prosecutor did not breach the plea agreement when he questioned Rardon's family members at the sentencing hearing.

¶23 Additionally, Rardon argues that the prosecutor breached the plea agreement by subpoenaing D.N. to testify at the continuation of the sentencing hearing after she had declined to attend the hearing two weeks earlier. This action, Rardon argues, constitutes a breach because the District Court already had her statements from the PSI Report as well as her testimony from the prior hearings, and thus the prosecutor's purpose could only have been to "send the message to the court that the recommended sentence in the plea agreement is insufficient." Rardon cites no authority for the proposition that this Court could or should draw such an inference. This Court simply can not infer that the prosecutor intended to undermine the plea agreement by the mere fact that he subpoenaed D.N. to testify. Nor do we infer an improper intent from any other evidence in the record. Further, setting aside any speculation as to the prosecutor's intent, we observe that the subpoena had no actual impact

10

with regard to the hearing because D.N. testified that she had decided to appear and testify before the subpoena was issued. Indeed, she expressed gratitude for the opportunity to testify, explaining that her prior failure to appear was simply due to her apprehension about the proceeding. In short, Rardon's argument is utterly without merit. We hold that the prosecutor did not breach the plea agreement by subpoenaing D.N. to testify.

¶24 ***2. Did Flathead County Attorney Ed Corrigan violate this Court's instructions on remand?***

¶25 Rardon argues that Corrigan's involvement in this matter violated the instructions we issued in *Rardon II* which specified that Corrigan was not to represent the State in the third sentencing hearing. In support of this argument, Rardon points to a meeting where Corrigan introduced Guzynski to D.N., J.T., and Rardon's ex-wife, and explained that Guzynski would thereafter represent the State. Further, Rardon asserts that when D.N. called the Flathead County Attorney's Office regarding her subpoena, Corrigan "chastised" her for not testifying. Finally, Rardon insinuates that Corrigan's involvement had some effect on D.N.'s decision to testify.

¶26 We hold that Corrigan's contacts with D.N. and her family do not amount to a violation of this Court's instructions in *Rardon II*. While we specified that Corrigan could not represent the State in the third sentencing hearing, *Rardon II*, ¶ 26, we did not bar him from all contact with Rardon's family. Corrigan did not represent the State on remand, and he was not present at the third sentencing hearing. As for the brief phone conversation between Corrigan and D.N., the record does not indicate that Corrigan "chastised" D.N. for

11

not testifying, nor does it demonstrate in any way that he prompted her to testify. Moreover, D.N. clearly stated that she had decided to testify before this conversation took place. As such, we hold that Corrigan did not violate this Court's instructions given in *Rardon II*.

¶27 *3. Did the sentence violate Rardon's right to due process?*

¶28 Rardon argues that his right to due process was violated when he received a harsher sentence than was issued in either of the prior proceedings. In support of this argument, Rardon suggests that he was penalized for twice exercising his right to appeal and prevailing both times. Upon this contention, Rardon asks this Court to infer that Judge Christopher acted vindictively in rendering the sentence, thus implicating his right to due process.

¶29 Rardon's third sentence is significantly shorter than either of his first two sentences. In the first proceeding, Judge Lympus imposed a sentence of sixty years and declared Rardon ineligible for parole for thirty-five years. *Rardon I*, ¶ 9. In the second proceeding, Judge Curtis imposed a sentence of fifty years and declared Rardon ineligible for parole for twenty-five years. *Rardon II*, ¶ 12. In the third proceeding, Judge Christopher imposed a sentence of thirty-seven years with no chance of parole. Thus, parole eligibility is the only sentencing component which is more harsh in Rardon's third sentence than in either of his first two. However, the change in the parole component of the sentence is offset by the reduction in the overall term of the sentence.

¶30 Although the third sentence guarantees that Rardon will serve more time than did either of the first two, the third sentence also guarantees that Rardon will not serve as much time as he could have served under either of the first two. Rardon will now serve exactly

thirty-seven years, whereas he may have ultimately served sixty years under the first sentence or fifty years under the second sentence. When we consider the reduction in the overall term of Rardon's sentence, together with the difference in parole eligibility, we determine that the third sentence, in its entirety, is not more harsh than either of the first two sentences. In other words, the third sentence was not more harsh than either of the first two because it precluded the possibility of Rardon serving sixty or fifty years at MSP, a possibility that was present in the first and second sentences respectively. Thus, we do not accept the premise of Rardon's argument supporting his due process claim. As such, we hold that Rardon's right to due process was not implicated by the third sentence.

**CONCLUSION**

¶31     In summary, the first two sentencing proceedings were tainted by the prosecutor's breach of the plea agreement. In the third proceeding, however, the prosecutor honored the State's obligation under the agreement. We hold that the prosecutor did not breach the plea agreement, Corrigan did not violate this Court's instructions in *Rardon II*, and the sentence did not violate Rardon's right to due process. Therefore, we affirm the District Court.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ PATRICIA O. COTTER
/S/ JIM RICE

14