No. 03-594

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 234

STATE OF MONTANA,

      Plaintiff and Respondent,

   v.

CAR-LOS A-LAIL MUHAMMAD,

      Defendant and Appellant.

APPEAL FROM:    The District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDC 98-203,
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Kristina Neal, Assistant Appellate Defender, Helena, Montana

      For Respondent:

         Honorable Mike McGrath, Attorney General; Anthony C. Johnstone,
Assistant Attorney General, Helena, Montana

         Brant Light, County Attorney, Great Falls, Montana

Submitted on Briefs:  August 11, 2004

Decided:  September 20, 2005

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Car-los A-lail Muhammad (Muhammad) appeals from the order entered by the Eighth Judicial District Court, Cascade County, denying his motion to withdraw his guilty plea of sexual intercourse without consent, a felony in violation of § 45-5-503(1) and (3)(a), MCA (1997).[1] We affirm.

¶2 Did the District Court err in denying Muhammad's motion to withdraw his guilty plea?

## FACTUAL AND PROCEDURAL HISTORY

¶3 On April 8, 1998, Muhammad was arrested and charged with having sexual intercourse with an underage female, a felony. At the time, Muhammad was twenty-two years old and the girl was fourteen. The parties met at a house party which Muhammad was hosting. On April 30, 1998, Muhammad was arraigned and entered a plea of not guilty. The District Court set trial for October 19, 1998.

¶4 Immediately following his arraignment, Muhammad began sending letters directly to District Court Judge Marge Johnson (Judge Johnson), asserting therein that the victim was a liar and that her accusations were for attention. He also complained of "lack of support" from his lawyer. Judge Johnson initially responded by forwarding copies of these letters to counsel. Later, on June 22, 1998, she issued an order directing Muhammad to refrain from further *ex parte* communications with the court.

---

[1]At various places, the District Court record indicates that Muhammad was charged and pled guilty to a violation of § 45-5-403(1) and (3)(a), MCA (1997), an incorrect code citation. The correct citation is § 45-5-503(1) and (3)(a), MCA (1997), but this discrepancy is not an issue on appeal.

¶5    On August 26, 1998, Muhammad entered into a plea agreement wherein he agreed

to plead guilty to sexual intercourse without consent in exchange for a commitment by the

State to recommend that the court impose a ten-year suspended sentence.  Pursuant to the

agreement, Muhammad signed an Acknowledgment of Waiver of Rights by Plea of Guilty,

acknowledging, in part, that:

> This plea is being voluntarily made and not the result of force or threats or promises.  I acknowledge that my attorney has explained to me and advised me of the following [trial rights and waiver thereof].
>
> . . . .
>
> I acknowledge that I am satisfied with the services of my attorney and that there has been ample time to prepare a defense.
>
> I am not suffering any emotional or mental disability from any cause including mental disease or defect and am not impaired from taking any drugs, alcohol, or prescription medication.  I fully understand what I am doing.
>
> . . . .
>
> I am satisfied that my lawyer has been fair to me and has represented me properly.

In response, the court set a change of plea hearing for September 24, 1998.  However, on

September 9, 1998, Muhammad, despite Judge Johnson's order, forwarded another letter to

her professing his innocence and requesting the court's permission to withdraw his guilty

plea, presumably, meaning to withdraw from his plea agreement.  Judge Johnson, in

compliance with her earlier order, did not respond directly to Muhammad, but forwarded

copies of his letter to counsel.

3

¶6 On September 24, 1998, Muhammad appeared with his counsel and for the purpose of entering a guilty plea to the charge. As he had done when he signed the Acknowledgment of Waiver of Rights by Plea of Guilty, Muhammad acknowledged to the court on the record, prior to entering his guilty plea, that: (1) he was not threatened with or promised anything outside of the written plea agreement; (2) he was not under the influence of drugs or alcohol; (3) he was not suffering from any disability; (4) he understood the action being taken against him; (5) he was pleading voluntarily; and (6) he was satisfied with his counsel's assistance. Upon questioning by counsel, Muhammad admitted the facts of the offense. Judge Johnson questioned Muhammad about his letters and whether he was waiving his defenses, to which he responded affirmatively. She then accepted his guilty plea.

¶7 Following the District Court's reduction of his bail, Muhummad posted bail and was released from jail on November 6, 1998. The sentencing hearing was postponed and different dates were set, but was ultimately held on May 17, 1999, about eight months after Muhummad had entered his plea, and six months after he was released from jail. Following the hearing, the court sentenced Muhammad to a six-year deferred sentence, contingent on numerous conditions.

¶8 On January 18, 2000, the State petitioned the District Court for revocation of Muhammad's deferred sentence for alleged violations of the conditions of his sentence. Following a hearing on June 5, 2000, the court revoked Muhammad's six-year deferred sentence and sentenced Muhammad to the Montana Department of Corrections for twenty years, with fifteen years suspended. Muhammad appealed this sentence to this Court. On

4

March 18, 2002, this Court affirmed his sentence in part, reversed in part and remanded for further proceedings. *State v. Muhammad*, 2002 MT 47, ¶ 52, 309 Mont. 1, ¶ 52, 43 P.3d 318, ¶ 52 (*Muhammad I*).

¶9 However, on September 12, 2001, while Muhammad's case was pending on appeal, the State filed a second petition to revoke the suspended sentence based upon further alleged violations of conditions, and a second revocation hearing was held on April 17, 2002, shortly after the Court's remand in *Muhammad I*. Muhammad entered a "true" answer to one of the alleged violations, and on April 24, 2002, the District Court, instead of imposing a prison sentence as it had done upon the first revocation sentencing, re-imposed a six-year deferred sentence similar to the sentence originally imposed on May 17, 1999.

¶10 However, on May 17, 2002, the State filed a third petition for the revocation of Muhammad's deferred sentence, again for alleged violations of sentencing conditions. Muhammad answered "not true" to the alleged violations, and the District Court scheduled a hearing on the matter. However, before the scheduled hearing, Muhammad, on November 13, 2002, over four years after entering his guilty plea to the charge, filed a motion to withdraw his plea. Following an evidentiary hearing, the District Court entered an order on April 10, 2003, denying the motion. From this denial, Muhammad appeals.

¶11 Thereafter, on April 30, 2003, following his third revocation hearing, Muhammad entered a "true" answer to violating several conditions of his deferred sentence. On May 13, 2003, the District Court then sentenced him to twenty years in the Montana State Prison with ten years suspended.

5

## *STANDARD OF REVIEW*

¶12    We review Muhammad's motion to withdraw his guilty plea to determine if the guilty plea was voluntary.  Our determination of whether a plea was voluntary is a mixed question of law and fact, which we review *de novo*.  *State v. Warclub*, 2005 MT 149, ¶ 23, 327 Mont. 352, ¶ 23, 114 P.3d 254, ¶ 23; *State v. Lone Elk*, 2005 MT 56, ¶ 10, 326 Mont. 214, ¶ 10, 108 P.3d 500, ¶ 10.

## *DISCUSSION*

¶13    **Did the District Court err in denying Muhammad's motion to withdraw his guilty plea?**

¶14    Section 46-16-105(2), MCA (1997), authorizes a district court to permit the withdrawal of a guilty plea upon a showing of "good cause."  By entering a guilty plea, a defendant waives numerous afforded constitutional rights and protections, and therefore the plea "must be a knowing and intelligent choice among the alternative courses of action open to the defendant." *State v. Ereth*, 1998 MT 197, ¶ 26, 290 Mont. 294, ¶ 26, 964 P.2d 26, ¶ 26.  The defendant, before entering the plea, must be "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel . . . ." *Brady v. United States* (1970), 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747, 760 (quoting *Shelton v. United States* (5th Cir. 1957), 246 F.2d 571, 572 n.2 (en banc), rev'd on other grounds, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958)).  To determine whether a defendant entered a plea voluntarily, and further, whether the district court erred in denying a defendant's motion to withdraw a plea, we may

6

examine "case-specific considerations," including the "adequacy of the district court's interrogation and [whether there was a] dismissal of another charge via plea bargain." *Warclub*, ¶ 19.

¶15 Muhammad argues that the District Court erred in denying his motion to withdraw his guilty plea because his plea was entered involuntarily. He cites to several factors which led him to enter a guilty plea which demonstrate that his plea on September 24, 1998, was not voluntary. Specifically, he contends that he signed the plea agreement out of "fear" and alleges that he was traumatized as a prisoner in the Cascade County Jail, asserting that he experienced "racism" and "fighting with other prisoners because of the charges filed against him." He claims that he just "wanted to get back to the outside where I could breathe, and at least research it, research some of the legal issues in this case, as opposed to being [in jail] . . . ." Further, he contends that the colloquy before he entered his plea had serious shortcomings, first, because the court had knowledge that his guilty plea was involuntary from the letters he forwarded to Judge Johnson complaining about his attorney's representation ("I'm being kicked to the curb by my lawyer"), and requesting the court's permission to "withdraw his guilty plea" prior to the change of plea hearing. Secondly, Muhammad asserts that the colloquy failed to establish a sufficient factual basis to support a guilty plea to the charge, as he never specifically admitted to knowing the victim's age at the time of the incident. Muhammad argues that he would not have pled guilty to the charges had his attorney advised him of the defense available to him under § 45-5-511, MCA (1997), of proving "that he reasonably believed the child to be above" sixteen years of age. Lastly,

7

Muhammad contends that Judge Johnson misled him about the statutory defense. During the hearing on his motion to withdraw plea, he testified that "I still said the same thing to the Judge, that I didn't know her age, and I certainly didn't rape her, and she told me at that hearing that it didn't matter that I said I didn't know her age because she claimed that I had raped her." Thus, Muhammad claims that Judge Johnson instructed him that knowledge of the victim's age was not a defense.

¶16    First, addressing Muhammad's argument that he was "fearful," we have previously noted that "a defendant's belief in his innocence or his fear of going to trial do not preclude him from making a voluntary and intelligent choice between possible alternative courses of action." *Lone Elk*, ¶ 25. As we noted in *Lone Elk*, where the defendant feared the possibility of sexual offender treatment, "[f]ear of the legal consequences of one's actions lies central to the criminal law purpose of deterrence." *Lone Elk*, ¶ 25. Neither is Muhammad's claim convincing that the conditions of his confinement made him physically fearful to the point of entering a guilty plea. Muhammad acknowledged repeatedly that he was not entering a plea under any threat and was doing so voluntarily. He was released from jail and was free for some six months prior to sentencing, and yet, even outside the environment of incarceration, he made no effort to withdraw his plea before the hearing.

¶17    Muhammad's release on bail while waiting sentencing also belies his contention that he merely pled guilty to obtain a release from jail to be able to "research" his case. ("If I were on the other side I would be able to fight with vigor . . . .") Muhammad was free from incarceration from November 6, 1998, through his sentencing on May 17, 1999, and

continued to be free thereafter under his deferred sentence until arrested for violation of his probationary conditions. At a minimum, Muhammad had six months "on the other side" in which to research the matter and to raise the voluntariness of his plea as an issue prior to his sentencing. Indeed, the conditions of his release on bail included a requirement that he contact his attorney *at least* once a week. However, no motion to withdraw was filed before sentencing, nor immediately thereafter.

¶18 Muhammad contends that he requested his attorney's assistance in filing a withdrawal motion, but that his attorney failed to do so. However, Muhammad filed no claim of ineffective assistance of counsel, and further, his testimony at the hearing on his withdrawal motion appears inconsistent with his claim that nothing was done:

> Q. Did you ask Mr. Jensen [Muhammad's attorney] . . . to do something, to study or to do something about the fact that you had entered a plea which you felt was inappropriate?
>
> A. Yes.
>
> Q. And did Mr. Jensen, as far as you understand, raise that issue before the Court?
>
> A. Well, he didn't make any strong argument about it.

Despite his current complaints, Muhammad acknowledged repeatedly in his plea agreement and in the colloquy at the change of plea hearing that his attorney had adequately represented him.

¶19 Muhammad's assertions that his attorney failed to advise him of an available defense under § 45-5-511, MCA (1997), and that Judge Johnson advised him that he had no defense

to the charge are also contradicted by the record. First, Muhammad testified during the colloquy as follows:

> [The court]: . . . I understand from statements you have made, either in court or in letters, that you claim that you did not know the victim was under the age of 16.

> [Defendant]: At that point, I didn't actually know her age. But I don't make excuses about drinking alcohol. I would have known if I wasn't drinking that night.

> [The court]: Okay. So you are waiving any defense based on that?

> [Defendant]: Correct.

Under oath, Muhammad admitted to having sexual intercourse without consent with an underage female as defined by § 45-5-503(1) and (3)(a), MCA (1997), and also waived any defenses under § 45-5-511, MCA (1997), when the court specifically discussed this issue with him and referenced the statements he had made in his letters that he did not know the victim was under age sixteen. His claim that his attorney failed to advise him of this defense rings hollow in light of the District Court's reference to his letters in which he had discussed this issue, and his specific waiver of any defenses based upon his knowledge of the victim's age. Muhammad was obviously aware of the defense and was prepared to waive it when he entered his plea.

¶20 Further, our review of the record reveals no evidence that would support Muhammad's statement that Judge Johnson instructed him during the change of plea hearing that his knowledge of the victim's age was not a defense to the charge filed against him. The only evidence is to the contrary. Judge Johnson specifically inquired about Muhammad's

10

claim of knowledge of the victim's age, to which Muhammad replied that "I would have known [her age] if I wasn't drinking" and then waived any defense based thereon.

¶21 Resolution of the above contentions also undermines Muhammad's claim that the plea colloquy was inadequate because the District Court knew from his letters that he pled guilty involuntarily and that the issue of the age of his victim, as part of the proper "factual basis" for his plea required by § 46-12-212, MCA (1997), was not established. Despite the claims in his letters that he had entered the plea agreement by mistake, was not being represented properly and that he did not know the age of the victim, he abandoned all of these assertions under oath in the change of plea hearing. There, he affirmed the work of his counsel, waived his defenses to the victim's age and affirmed his agreement to plead guilty. Had Muhammad been dissatisfied with any of these matters, he had the full opportunity to raise them at that time. Though Muhammad had already proved that he was not "shy" about communicating with the court, he nonetheless failed to do so, and, to the contrary, asserted he was entering his plea voluntarily.

¶22 Muhammad contends that the District Court's plea colloquy was inadequate for the additional reason that it failed to establish his understanding of the charges filed against him and that he was pleading guilty to each element of the crime. For the reasons discussed above, we believe the colloquy was adequate to establish the elements of the crime, but, even so, we have determined that a district court's colloquy "need not extract an admission from the defendant of every element of the crime in order to establish a factual basis for the guilty plea." *State v. Schaff*, 1998 MT 104, ¶ 22, 288 Mont. 421, ¶ 22, 958 P.2d 682, ¶ 22. After

11

a review of the record here, we conclude the colloquy adequately addressed the elements of the offense and laid the factual basis for acceptance of the plea.

¶23   Muhammad's citations to *State v. Lance* (1982), 201 Mont. 30, 651 P.2d 1003, and *State v. Huttinger* (1979), 182 Mont. 50, 595 P.2d 363, on this issue are unavailing. In *Lance*, we concluded that "[t]he record is *void of any indication* that defendant was aware of the available defense as contained in section 45-5-304, MCA." *Lance*, 201 Mont. at 33, 651 P.2d at 1004 (emphasis added). As discussed above, that is not true here. Nor are there the serious inadequacies in the colloquy which we found in *Huttinger*, where the defendant did not actually admit to committing any crime, let alone to the charge of deliberate homicide, nor was any information identifying the particular crime entered in the record or defendant asked about the services of his counsel. *Huttinger*, 182 Mont. at 58, 595 P.2d at 368.

¶24   Lastly, Muhammad received the "benefit of the bargain" from his plea agreement. The agreement required Muhammad's admission of guilt and required the State to recommend a ten-year suspended sentence. Muhammad received the benefit of that bargain, with the State recommending a ten-year suspended sentence, and the court imposing a six-year deferred sentence. Indeed, he received that sentence a second time following remand by this Court. The benefits obtained under a plea bargain "may bear on the question of voluntariness." *Warclub*, ¶ 19. It was not until four and one-half years after receiving his initial deferred sentence–when it became apparent that he faced the loss of his freedom–that Muhammad filed a motion to withdraw his plea. Though we no longer look to timeliness in

isolation as a factor to assess the voluntariness of a plea, *Lone Elk*, ¶ 15, the delay in this matter, when viewed in context of Muhammad's situation when it was filed–facing prison–and the other matters of record, is a "case-specific consideration" which further reflects on the lack of credibility of Muhammad's claims. *Warclub*, ¶ 19.

¶25 We conclude that Muhammad's guilty plea to the charges under § 45-5-503(1) and (3)(a), MCA (1997), entered after signing an Acknowledgment of Waiver of Rights by Plea of Guilty, and after engaging in a proper colloquy with his attorney and the court, was voluntary. Muhammad testified that he understood the charges against him, that he was pleading voluntarily, and that he was satisfied with the assistance of his counsel. He admitted to the crime and waived his defenses based upon the age of the victim. Muhammad well understood the repercussions of his decision and the resulting risks inherent in choosing the alternative of pleading guilty.

¶26 We therefore conclude that the District Court did not err in denying Muhammad's motion to withdraw his guilty plea.

¶27 Affirmed.

/S/ JIM RICE

We concur:

/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART

13