FILED

August 11 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0747

DA 13-0747

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 230

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JAYSON WARNER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DDC 13-042
Honorable Dirk M. Sandefur, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Wade Zolynksi, Chief Appellate Defender, Gregory Hood, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Pamela P. Collins, Assistant
Attorney General, Helena, Montana

            John W. Parker, Cascade County Attorney, Great Falls, Montana

Submitted on Briefs:  May 6, 2015
Decided:  August 11, 2015

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Jayson Warner appeals from the denial of his motion to withdraw plea in the Eighth Judicial District Court, Cascade County. We affirm.

¶2 The issue presented for review is whether the District Court should have allowed Warner to withdraw his plea of nolo contendere when it allowed the State to deviate from its sentencing recommendation after Warner breached the plea agreement by being arrested for a subsequent offense.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 On January 9, 2013, Officer Beall of the Great Falls Police Department investigated a disturbance at a residence. Warner was the complainant. During his conversation with Officer Beall, Warner mentioned that he was a registered sex offender, that he and another person had just moved in to the residence, and that he was listed as transient. Officer Beall advised Warner that he would need to update his address, and Warner promised to do so the following day. On January 18, nine days later, Officer Beall learned that Warner had not yet updated his address and had a history of not maintaining his registry information. Officer Beall visited Warner's apartment again and spoke with the other resident, who indicated that she and Warner had moved in on January 4, and Warner had stayed at the apartment every night. Officer Beall arrested Warner for failing to give notice of his change of residence. Warner immediately cooperated and stated that he had not spent more than two nights at the apartment. Warner was charged by information with failure to give notice of change of home residence as a registered sex offender, a felony.

2

¶4 On June 3, 2013, Warner signed a written plea agreement pursuant to § 46-12-211(1)(c), MCA. The agreement first stated that although the parties would make sentencing recommendations, such recommendations would not be binding upon the court. In accordance with § 46-12-211(2), MCA, if the court did not follow the sentencing recommendation of either party, Warner would not be entitled to withdraw his plea. Warner agreed to plead nolo contendere to the charge of failure to provide notice of change of residence, which carried a maximum penalty of five years in the Montana State Prison (MSP). The State agreed to recommend a three-year commitment to the Department of Corrections (DOC), to dismiss the charges pending in another case, and not to seek designation as a persistent felony offender (PFO). The agreement also stated, "Each party understands and agrees that a plea of NOLO CONTENDERE entered to any charge pursuant to this agreement cannot be subsequently withdrawn except as provided by law." The final clause of the agreement, under the heading "AGREEMENT OF THE COUNTY ATTORNEY," stated, "The foregoing plea agreement is contingent upon the defendant not committing any additional crimes or being arrested for any additional crimes prior to sentencing." Warner also signed an acknowledgement of rights.

¶5 On June 10, 2013, the District Court accepted Warner's plea of nolo contendere after explaining the five-year maximum penalty; the State's agreement to seek a three-year DOC commitment, drop additional charges, and not seek a PFO designation; that his placement during his commitment would be within DOC discretion; and that by pleading nolo contendere, he was not admitting the factual basis of the charges, but was acknowledging that the State may be able to convict him at trial. Warner stated that he understood each of

3

these points.  The District Court also stated, "And ultimately, what to do with you is—will be up to me here; I'm not a party to this agreement; do you understand that?"  Warner replied, "Yes, I do."  The District Court further explained:

> And this is called a nonbinding agreement.  And I don't see any reason to not go along with this and I'll just tell you right now the likelihood is, is that I would sentence you to nothing worse or more harsh than the three years to the Department of Corrections.  But if for some reason I did decide to do something different about that, within the five-year limit, you're stuck with that.  You can't withdraw your plea, do you understand that?

Warner replied, "Yes, I do."  Warner then confirmed that he had not been promised anything other than the agreement of the State in return for his plea, did not feel unduly pressured to change his plea, and was changing his plea voluntarily.  He also stated that his attorney had adequately represented him.  Warner confirmed that he understood the allegations against him and acknowledged that if he went to trial, there was a chance he could be convicted.  He stated that he believed a plea agreement was therefore in his best interests.  In response to the District Court's questioning on this point, Warner repeatedly stated that he understood, saying, "No, I get what you said."  Warner also confirmed that he was not under the influence of drugs or alcohol and had no impairment affecting his understanding of the proceedings.  The court then accepted the plea agreement.

¶6      On August 13, 2013, the State moved to continue the sentencing hearing "for the reasons that the State is considering withdrawing from the plea agreement in light of the new forcible sexual intercourse without consent that has been referred to our office for prosecution."  On September 6, 2013, the State filed notice of its withdrawal from the plea agreement, "in light of the Defendant being arrested and charged with Sexual Intercourse

4

Without Consent, Custodial Interference, and Endangering the Welfare of a Child." The State referred to the clause of the plea agreement making it contingent upon Warner not committing or being arrested for any additional crimes prior to sentencing. The State then asked the court to set the matter for trial and vacate the sentencing hearing.

¶7 On September 12, 2013, the date set for the sentencing hearing, the State again notified the court of its intention to withdraw from the plea agreement. The court agreed that it appeared Warner had breached the plea agreement, and went on to say:

> The question then is, as a matter of contract law, what's the remedy for that? And in a typical contractual situation, the State's contract duty here was to make a particular recommendation. And if one party materially breaches a contract, that relieves the other party of the reciprocal contract duty under the contract, which in this case is for the State to make this recommendation called for in the plea agreement. What I don't see here in any contractual analysis of this scenario is a situation where a breach of the contract invalidates the contract itself and puts it back like it didn't happen. And so, in my mind, the breach of the contract relieves the State of the obligation to make that recommendation, but that doesn't vitiate his guilty plea.
>
> [O]n the assumption that he did breach the agreement, which it appears that he did, I don't see any right that he has to withdraw his guilty plea and I don't see any right that the State has to declare the agreement invalid ab initio. What I do see is that the State has the right to not be bound by that agreement and make whatever recommendation you wish to make.

The State replied that it "had not anticipated that line of reasoning," and requested a brief recess to reconsider its recommendation in light of the court's statements.

¶8 After the recess, the State indicated it would not seek a PFO designation and recommended a five-year DOC commitment. The State also said it intended to re-file the charges previously dismissed in another case. Warner then moved to withdraw his plea.

5

Defense counsel conceded that Warner's arrest allowed the State to withdraw from the plea agreement pursuant to its terms, but argued:

> [T]he way that I saw it was that this was a bargain[ed] for exchange. . . . [A]t this point . . . there is no contract. There is no agreement. There is nothing . . . for [Warner] to be required to perform under when there's no contract that exists. He would not have entered his no contest plea but for the fact that there was a plea agreement here, and I think the fact that there now is none, Your Honor, would be the basis for him to be permitted to withdraw his plea.

The District Court disagreed, finding no basis to deem the plea agreement null and void or to allow Warner to withdraw his guilty plea. The District Court denied the motion to withdraw and sentenced Warner to five years at MSP. Warner appeals.

**STANDARD OF REVIEW**

¶9    We review a district court's ruling on a motion to withdraw plea to determine whether the plea was voluntary. *State v. Muhammad*, 2005 MT 234, ¶ 12, 328 Mont. 397, 121 P.3d 521. Historically, we had reviewed the denial of a motion to withdraw plea for an abuse of discretion. *See, e.g., State v. Schoonover*, 1999 MT 7, ¶ 10, 293 Mont. 54, 973 P.2d 230 (citing *State v. Bowley*, 282 Mont. 298, 304, 938 P.2d 592, 595 (1997)). In *State v. Lone Elk*, 2005 MT 56, ¶ 10, 326 Mont. 214, 108 P.3d 500, *overruled in part on other grounds by State v. Brinson*, 2009 MT 200, ¶ 9, 351 Mont. 136, 210 P.3d 164, and later in *State v. Warclub*, 2005 MT 149, ¶¶ 20-21, 327 Mont. 352, 114 P.3d 254, we noted that determining the voluntariness of a plea is not a discretionary matter, but a mixed question of law and fact to be reviewed de novo. Thus, we review underlying findings of fact for clear error, questions of law for correctness, and the ultimate question of voluntariness de novo. *Warclub*, ¶ 24.

6

## DISCUSSION

¶10 *1. Should the District Court have allowed Warner to withdraw his plea of nolo contendere when it allowed the State to deviate from its sentencing recommendation after Warner breached the plea agreement by being arrested for a subsequent offense?*

¶11 Warner argues that his plea should be withdrawn because following his breach, the State was required to choose between the remedies of specific performance, which he claims would have required the State to abide by its agreed sentencing recommendation, or rescission, which he claims would have allowed him to withdraw his plea. The State, on the other hand, argues that while Warner's breach excused the State from its obligations under the agreement, it did not entitle Warner to withdraw his plea.

¶12 We addressed the proper remedy for a prosecutor's breach of a plea agreement in *State v. Munoz*, 2001 MT 85, 305 Mont. 139, 23 P.3d 922. In *Munoz*, ¶ 3, the State and the defendant entered an agreement contemplating that the State would recommend a three-year sentence in exchange for the defendant's plea of guilty. At sentencing, however, the prosecutor asked the court to impose a five-year sentence as recommended in the presentence investigation. *Munoz*, ¶ 5. The defendant then moved to withdraw his plea. *Munoz*, ¶ 7. The court denied the motion, and we reversed. *Munoz*, ¶ 10.

¶13 Citing *Santobello v. New York*, 404 U.S. 257, 263, 92 S. Ct. 495, 499 (1971), we identified two remedies available to a defendant in the case of the State's breach of a plea agreement. *Munoz*, ¶¶ 13-18. First, the defendant may elect specific performance, requiring the State to uphold its end of the bargain. *Munoz*, ¶ 16. Because the sentencing court is not a party to a non-binding plea agreement, however, specific performance by the State does not

7

require the court to accept the plea or to impose a particular sentence. *Munoz*, ¶ 17. Second, the defendant may elect rescission of the plea agreement. *Munoz*, ¶ 18. If the plea agreement is rescinded, the defendant's guilty plea may be withdrawn, and the parties may proceed to trial as if the agreement never existed. *Munoz*, ¶ 18. Withdrawal of the plea is appropriate under such circumstances because "'a plea of guilty resting in any significant degree on an unfulfilled plea bargain is involuntary and subject to vacation.'" *Bowley*, 282 Mont. at 311, 938 P.2d at 599 (quoting *State v. Allen*, 199 Mont. 204, 209, 645 P.2d 380, 382 (1981)).

¶14 The choice of remedy is in the hands of the defendant as the non-breaching party, unless the State demonstrates by clear and convincing evidence that the defendant's choice of remedy would result in a miscarriage of justice. *Munoz*, ¶ 38. Although plea agreements are subject to rules based on contract law, the analogy is not a strict one and must give way to concerns about a defendant's due process rights. *Munoz*, ¶¶ 14-15. "[A] guilty plea is a serious and sobering occasion inasmuch as it constitutes a waiver of the fundamental rights to a jury trial, to confront one's accusers, to present witnesses in one's defense, to remain silent, and to be convicted by proof beyond all reasonable doubt." *Santobello*, 404 U.S. at 264, 92 S. Ct. at 500 (Douglas, J., concurring) (citations omitted). Because the overriding consideration is not the strict application of contract law, but the interests of justice, in some circumstances, courts may exercise their discretion to fashion an appropriate remedy. *Munoz*, ¶ 13 n.1.

¶15 Warner relies on *Munoz* to argue that specific performance and rescission are the only remedies available for the breach of a plea agreement. The circumstances here are

distinguishable from those in *Munoz*, however, because the defendant, not the State, is the breaching party. Some courts have stated that, if a breaching defendant wishes to withdraw his or her plea, the entire agreement must be vacated and the plea withdrawn so that the parties are restored to their original positions. *United States v. Cimino*, 381 F.3d 124, 128 n.3 (2d Cir. 2004). Others have held that the defendant's failure to perform his or her obligations under the plea agreement releases the state from its reciprocal obligations without entitling the defendant to withdraw his or her plea. *State v. Foy*, 574 N.W.2d 337, 339-40 (Iowa 1998). One state, Wisconsin, appears to have applied both rules, largely leaving the question of the remedy for a defendant's breach to the discretion of district courts. *Compare State v. Reed*, 839 N.W.2d 877, 881 (Wis. Ct. App. 2013) (affirming district court's exercise of discretion in allowing state to exceed negotiated sentencing recommendation after defendant's breach), *with State v. Zuniga*, 652 N.W.2d 423, 427 (Wis. Ct. App. 2002) (stating that the remedy for a defendant's breach is to vacate the plea agreement and guilty plea). Additionally, legal commentary supports the conclusion that there is no clear or mandatory rule. *See* 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.2(e), 670-72 (3d ed. 2007).

¶16     The agreement between Warner and the State explicitly stated, "Each party understands and agrees that a plea of NOLO CONTENDERE entered to any charge pursuant to this agreement cannot be subsequently withdrawn except as provided by law." Montana law provides that a plea of guilty or nolo contendere may be withdrawn for good cause, including the involuntariness of the plea. Section 46-16-105(2), MCA; *Warclub*, ¶ 16. The waiver of constitutional rights pursuant to a plea of guilty or nolo contendere "'must be a

9

knowing and intelligent choice among the alternative courses of action open to the defendant.'" *Muhammad*, ¶ 14 (quoting *State v. Ereth*, 1998 MT 197, ¶ 26, 290 Mont. 294, 964 P.2d 26, *overruled in part by State v. Deserly*, 2008 MT 242, ¶ 12 n.1, 344 Mont 468, 188 P.3d 1057, *overruled in part by Brinson*, ¶ 9). In assessing the voluntariness of a plea, we examine case-specific considerations, including the adequacy of the interrogation by the district court and whether the agreement included dismissal of another charge. *Muhammad*, ¶ 14. A plea of guilty or nolo contendere entered by a defendant "fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel," may not be withdrawn unless induced by threats, misrepresentation, or improper promises. *Brady v. United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970).

¶17 Here, Warner signed a plea agreement and acknowledgment of rights stating that, pursuant to § 46-12-211(1)(c), MCA, the agreement was not binding upon the court, sentencing was entirely within the discretion of the judge, and "[i]f for any reason the Court does not follow the sentencing recommendation of either party, the Defendant shall not have the right to withdraw his plea upon that basis." The agreement also stated that it was "contingent upon" Warner not committing or being arrested for any additional crimes. The District Court asked Warner several times whether he had read the agreement, been advised about the agreement, and fully understood the meaning and consequences of the agreement. Warner replied yes each time and stated that he had no questions about his rights. The District Court specifically informed him, "if for some reason I did decide to do something different about that, within the five-year limit, you're stuck with that. You can't withdraw

your plea; do you understand that?" Warner said he did. Warner does not allege that the District Court's interrogation was inadequate, and the record demonstrates that the District Court thoroughly questioned Warner about his understanding of the agreement. *See Muhammad*, ¶ 14.

¶18 The agreement also contemplated that another charge against Warner would be dismissed and he would not be treated as a PFO. The additional charges were later refiled, but Warner retained the benefit of the State's agreement not to seek PFO designation. As the District Court explained to Warner, a PFO designation could have increased the maximum penalty from five years to 100 years at MSP. Warner retained this benefit of the agreement, which the District Court characterized as significant, despite the State's withdrawal. *See Muhammad*, ¶ 14.

¶19 The ultimate consequence of the State's withdrawal from the plea agreement was that Warner received a sentence of five years at MSP rather than a three-year DOC commitment. As Warner was repeatedly informed, because his plea was entered under subsection (1)(c), the District Court was not bound by the three-year recommendation contemplated by the agreement. The agreement specifically recognized that Warner could receive a five-year sentence to MSP regardless of the parties' sentencing recommendations. Warner understood this, and was therefore aware of the "actual value" of the commitments made to him by the State. *Brady*, 397 U.S. at 755, 90 S. Ct. at 1472. Warner knowingly, intelligently, and voluntarily accepted that a five-year sentence was a possible consequence of his plea. *Muhammad*, ¶ 14.

¶20 In *Munoz*, ¶ 38, we left the choice of remedy for a breach of plea agreement in the hands of the non-breaching party, unless clear and convincing evidence established that doing so would result in a miscarriage of justice. Before Warner's breach, the plea agreement stated that the District Court was free to impose a sentence of five years at MSP. After Warner's breach, he received a sentence of five years at MSP. This was not a miscarriage of justice. In *Munoz*, ¶ 13 n.1, we also observed that a district court retains some discretion in fashioning a remedy for the breach of a plea agreement. The District Court here abided by the standard established by the Montana Legislature: a plea may be withdrawn "for good cause shown." Section 46-16-105(2), MCA. The plea agreement was non-binding under § 46-12-211(1)(c), MCA; Warner was specifically informed prior to entry of his plea that he could receive the sentence ultimately imposed; he was informed that he could not withdraw his plea except as provided by law; and the cause of the State's variance from its anticipated recommendation was Warner's own breach of the agreement. The facts of this case do not establish that good cause exists to allow the withdrawal of Warner's plea.

## CONCLUSION

¶21 Warner's plea was entered voluntarily, with knowledge that the District Court could impose the sentence he ultimately received. Under the circumstances presented here, good cause to allow withdrawal of Warner's plea of nolo contendere has not been shown.

¶22    Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER