FILED

07/08/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0366

DA 23-0366

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 152N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

NINA ANGELINA AUGUSTA HUFF,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC-22-633
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Tammy A. Hinderman, Appellate Defender Division Administrator,
Charlotte Lawson, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant
Attorney General, Helena, Montana

            Joshua A. Racki, Cascade County Attorney, Amanda Lofink, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs:  June 18, 2025

Decided:  July 8, 2025

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Nina Angelina Augusta Huff (Huff) appeals the order and judgment of the Eighth Judicial District Court, Cascade County, sentencing her to a longer term in the Montana Women's Prison than had initially been recommended in the plea agreement. We affirm.

¶3 In January 2023, Huff entered into a non-binding plea agreement to charges of burglary, criminal mischief, theft, and criminal mischief common scheme arising from two separate cases. Pursuant to the plea agreement, the State agreed to recommend a ten-year Department of Corrections (DOC) commitment with five years suspended on the burglary charge; a five-year DOC commitment with all time suspended on the criminal mischief charge; a ten-year DOC commitment with five years suspended on the theft charge; and a ten-year DOC commitment with five years suspended on the criminal mischief common scheme charge. In total, the State's recommendation was between a minimum of 10 years, 5 suspended, and a maximum of 35 years, 20 suspended. The State left the question of whether to run the sentences concurrently or consecutively to the District Court's discretion. After Huff admitted to the facts supporting each of the charges, the District Court accepted Huff's guilty pleas and provided further instructions:

2

THE COURT: Next step in the process will be a presentence investigation report, which is going to begin with a questionnaire that you'll get at the AP&P office, which is on 219 5th Street, right? Do I have the address right?

THE STATE: I believe so.

THE COURT: So, you're downtown and should be able to get there by noon. I'm going to give you a noon deadline to get there and pick that document up and I'm ordering you to follow whatever instructions they give you about turning it back in and they are going to want to interview you too.

HUFF: Okay.

THE COURT: And you know, whatever they tell you they need to do in connection with this PSI, you have to do. And I am making that a part of your release conditions now by oral amendment. So, if it gets back to me that you didn't turn the PSI questionnaire back in or you blew off the PSI interview or whatever, she's going to tell me about it, I'm immediately going to revoke your bond.

HUFF: Okay.

THE COURT: Do not let that happen.

HUFF: Okay.

¶4 Huff did not cooperate. On February 1, the State petitioned to revoke Huff's bond, alleging that she had "evaded contact by Adult Probation & Parole to set up the PSI interview." The District Court informed Huff's counsel of her noncompliance on February 9, and "said it would revoke her release if she was not back in contact by 5 p.m. on February 10." Accordingly, the District Court revoked her bond and issued a bench warrant for her arrest on February 13. Huff completed the PSI questionnaire and interview while in custody, and the report was submitted on March 23.

¶5 Huff's sentencing hearing was held on April 13. The State argued that it was not bound by its initial sentencing recommendation because of Huff's failure to comply with

the PSI process; instead, it increased its recommendation to a minimum of 25 years, 10 suspended and a maximum of 45 years, 20 suspended. Huff argued that her noncompliance was not a material breach of the plea agreement because she eventually completed the PSI, and because her failure to remain in contact was due to her lack of phone and housing as opposed to willful behavior. The District Court found Huff's behavior to be a material breach:

> THE COURT: If you don't have a phone, if you are staying with somebody, and that's the phone number you provide and you leave or you get kicked out or whatever happened, her legs still worked, she was supposed to get down to the office and let them know where she was. She didn't do it and I had to send the cops out looking for her. So, I'm finding that that was a material breach and I'm finding that allows [the State] to deviate from the plea agreement and make a harsher recommendation.

The District Court ultimately sentenced Huff to the Montana Women's Prison for a term of four years on each of the four counts, none suspended, with each term to run consecutively. It noted specifically in anticipation of this appeal:

> THE COURT: [W]hen the OPD appellate lawyers go to claim that [the State] being allowed to deviate from the plea agreement is what caused this [increased sentence], they will be wrong. . . . This is my sentence. I am responsible for it and I've spent quite a bit of time thinking about it and there's not the result of anything that has happened in this room this afternoon. It is the result of what happened in this case.

Huff appeals.

¶6 Except as otherwise provided by statute, plea agreements are contracts governed by generally applicable contract law. *State v. Kalina*, 2025 MT 70, ¶ 48, 421 Mont. 305, 567 P.3d 270. Whether the State has breached a plea agreement is a question of law that we review de novo. *State v. Newbary*, 2020 MT 148, ¶ 5, 400 Mont. 210, 464 P.3d 999 (citing

4

*State v. McDowell*, 2011 MT 75, ¶ 12, 360 Mont. 83, 253 P.3d 812; *State v. Bullplume*, 2011 MT 40, ¶ 10, 359 Mont. 289, 251 P.3d 114). Sentencing courts are not parties to plea agreements and are not bound by them, particularly in the case of agreements under § 46-12-211(1)(c), MCA.

¶7    Huff does not contest that the sentence ultimately imposed is a legal sentence that conforms to statutory parameters. Rather, she asserts that the State breached the plea agreement and that she is entitled to remedies for breach, regardless of the District Court's explicit statement that it was not sentencing based on the State's altered recommendation.

¶8    "There are no exact criteria a district court must follow when determining whether a party has breached the plea agreement, rather 'each case must be decided on its own unique facts.'" *State v. Claus*, 2023 MT 203, ¶ 16, 413 Mont. 520, 538 P.3d 14 (quoting *State v. Rardon*, 2005 MT 129, ¶ 20, 327 Mont. 228, 115 P.3d 182). Huff was specifically ordered to cooperate with Adult Probation and Parole in the PSI process. She did not. She argued that her noncompliance was only a slight delay, caused by outside circumstances, that was ultimately immaterial because she complied with the PSI process once she was in custody. The District Court disagreed, suggesting that Huff could and should have made some effort to contact the Probation and Parole office; instead, she was unreachable until she was arrested. With the District Court's finding that she materially breached the condition, the State was entitled to its choice of remedy, in this case, a recommendation that varied from the plea agreement. *Claus*, ¶ 16 (citing *State v. Warner*, 2015 MT 230, ¶ 20, 380 Mont. 273, 354 P.3d 620).

5

¶9    The question of material breach aside, the plea agreement was governed by § 46-12-211(1)(c), MCA, which does not bind the court to the recommendation of the parties. The District Court was explicit that its sentencing decision was not based upon the State's recommendation—varied upwards or not—and the sentence is a completely lawful exercise of its discretion based on the facts of the offenses. There is no suggestion that Huff's requested remedies, even if granted, would have changed the District Court's decision. For these reasons, we affirm.

¶10    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M BIDEGARAY
/S/ BETH BAKER
/S/ JIM RICE