No. 05-368

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 59

_____

STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

MICHAEL JAMES BARTOSH,

       Defendant and Appellant,

_____

APPEAL FROM:    District Court of the Eleventh Judicial District,
                  In and for the County of Flathead, Cause No. DC 04-033B,
                  The Honorable Katherine R. Curtis, Presiding Judge.


COUNSEL OF RECORD:

       For Appellant:

           Mark R. Sullivan, Attorney at Law, Kalispell, Montana

       For Respondent:

           Hon. Mike McGrath, Attorney General; Pamela P. Collins, Assistant
           Attorney General, Helena, Montana

           Ed Corrigan, County Attorney; Lori A. Adams, Deputy County Attorney,
           Kalispell, Montana

                            _____

                      Submitted on Briefs:  March 8, 2006

                                Decided:  March 6, 2007

Filed:

_____
                       Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Michael James Bartosh (Bartosh) appeals from a sentence imposed on him by the Eleventh Judicial District Court, Flathead County. We affirm.

¶2 We restate the issues on appeal as follows:

¶3 1. Did the District Court err when it overruled Bartosh's objections to inclusion of transcripts of Bartosh's telephone conversations in the pre-sentence investigation report (PSI), and to a social worker's testimony, on the grounds that they violated the plea agreement?

¶4 2. Did the State breach the plea agreement when it indicated to the court that it was "not happy" with Bartosh's answers to questions in the PSI?

¶5 The State charged Bartosh by information filed January 27, 2004, with assault on a minor. The affidavit in support of the information alleged that Bartosh beat his juvenile daughter, A.B., severely bruising her back and buttocks. On February 4, 2005, Bartosh entered a plea agreement with the State in which he agreed to plead *nolo contendere* to criminal endangerment. In return, the State agreed to recommend a five-year suspended sentence to Montana State Prison (MSP).

¶6 On February 8, 2005, the State filed an amended information charging Bartosh with criminal endangerment. The District Court held a change of plea hearing the same day. At the hearing, the District Court expressed concern as to whether Bartosh was accepting responsibility by refusing to plead guilty, explaining "a part of the sentence I'm going to give you is gonna be based on your accepting responsibility." Bartosh replied by saying he thought he could lose custody of his daughter if he pled guilty. The deputy

2

county attorney explained that the Department of Public Health and Human Services (DPHHS) would treat a plea of *nolo contendere* the same as a plea of guilty. Following discussions between the District Court and counsel, Bartosh decided not to plead guilty at that time.

¶7 On February 11, 2005, Bartosh entered an agreement to plead guilty to assault on a minor. In return, the State again agreed to recommend a five-year suspended sentence. The plea agreement provided that the State would make a sentencing recommendation to the District Court, but the court could impose any sentence authorized by law. It further provided that if the court imposed a sentence harsher than the recommendations, Bartosh did not have the right to withdraw his guilty plea. Bartosh understood this provision. Based on this agreement, the State filed a second amended information charging Bartosh with assault on a minor. The District Court held another change of plea hearing at which Bartosh pled guilty, and the District Court accepted his plea. The District Court set a sentencing hearing for March 24, 2005, and ordered preparation of a PSI.

¶8 The probation officer who drafted the PSI reviewed the county attorney's file. In the file were transcripts of telephone conversations that occurred on February 8, 2005, between Bartosh and his fiancée that were recorded while he was in jail. These transcripts contained derogatory comments Bartosh made about the district judge, possible evidence of witness tampering by Bartosh, and comments by Bartosh minimizing his assault on A.B. The probation officer attached copies of these transcripts to the PSI. The PSI was provided to Bartosh and his counsel. At the sentencing hearing, Bartosh's counsel moved to strike the transcripts arguing that the State must have

3

provided them and thereby violated the spirit of the plea agreement. In response, counsel for the State argued that the probation officer, as an employee of the Department of Corrections, was not bound by the plea agreement and, thus, the transcripts were properly included in the PSI.

¶9 The District Court denied the motion to strike the transcripts. The district judge found that some parts of the transcript were not probative, including Bartosh's derogatory comments about her, and stated that they would not be considered. Other parts of the transcripts, however, were relevant, including the attempt by Bartosh to convince his fiancée to testify on his behalf if the case went to trial and Bartosh's minimization of his assault on his daughter.

¶10 The PSI noted that when asked what he thought the court should do in his case, Bartosh responded, "Dismiss the charges." Bartosh testified at the sentencing hearing. On cross-examination, the deputy county attorney asked how this response squared with the requirement that he take responsibility for his actions. Bartosh responded, "I didn't know that would go to the court. I just was frustrated with all--going through that whole thing. I wish all that didn't happen."

¶11 The PSI also noted a treatment plan had been ordered in a separate action concerning Bartosh's custody of A.B. Bartosh indicated he had been actively fulfilling all requirements of the treatment plan. Bartosh also testified about what he had done to accomplish the goals of the treatment plan. During cross-examination, the deputy county attorney asked him specifics about how he had accomplished the goals of the treatment plan and Bartosh further described his efforts.

4

¶12 After Bartosh's testimony, the District Court asked the State for its sentence recommendation. The deputy county attorney responded:

> Your Honor, even though the State is not happy with the way the Defendant has answered the questions in the PSI, we do not believe he has breached the plea agreement in any way. Therefore, we would recommend the five-year suspended sentence to the [MSP] for the charge of assault on a minor.

¶13 The district judge then noted the State's concern about Bartosh's answers in the PSI about whether Bartosh was fulfilling the requirements of the treatment plan, indicating that this was also an important consideration to the court. The deputy county attorney, in response, advised the court that social worker Kori Taylor (Taylor) was in the courtroom and could provide information about Bartosh's compliance with the plan, should the judge desire.

¶14 Bartosh's counsel objected to Taylor testifying, arguing that such testimony would violate the spirit of the plea agreement. The District Court recessed to allow both sides to interview Taylor. After the recess, the deputy county attorney requested that Taylor be allowed to testify. Bartosh's counsel again objected. The objection was overruled.

¶15 Taylor testified concerning Bartosh's adherence to the requirements of his treatment plan. Her testimony contradicted some of what Bartosh said and in other respects was not favorable to him. On appeal, however, Bartosh's counsel does not call to this Court's attention any specific testimony by Taylor that would constitute a recommendation that the District Court not follow the plea agreement or that was otherwise untrue.

¶16 The author of the PSI recommended the court disregard the sentencing recommendation in the plea agreement and instead sentence Bartosh to five years at

5

MSP. This recommendation was based on Bartosh's extensive criminal history, his violent past and his current denial of wrongdoing.

¶17 The District Court did not follow the plea agreement, nor did it impose as harsh a sentence as that recommended by the PSI. Rather, the District Court sentenced Bartosh to the Department of Corrections for five years with two years suspended. The judge explained that she could not ignore his criminal history in imposing the sentence. This appeal followed.

¶18 At the sentencing hearing, defense counsel moved to strike the transcripts of the telephone conversations and objected to the testimony of Taylor, on the grounds that consideration of this evidence would violate the plea agreement. The District Court overruled both the motion to strike and the objection. We review a district court's decisions on claims that the State breached a plea agreement for an abuse of discretion. *State v. Rardon*, 2002 MT 345, ¶ 14, 313 Mont. 321, ¶ 14, 61 P.3d 132, ¶ 14 (*Rardon II*).

¶19 A plea agreement is a contract between the State and a defendant. The State may not retain the benefit of such an agreement while avoiding its obligations. Prosecutors must meet strict and meticulous standards of both promise and performance in fulfilling the State's obligations in plea agreements. A prosecutorial violation of a plea agreement is unacceptable, even if made inadvertently in the good faith pursuit of a just result. *State v. Rardon*, 2005 MT 129, ¶ 18, 327 Mont. 228, ¶ 18, 115 P.3d 182, ¶ 18 (*Rardon III*) (citing *Rardon II*, ¶ 18). It is unacceptable for a prosecutor to present information and to aggressively solicit testimony that is clearly intended to undermine the plea agreement and to convince the sentencing court that a plea bargained sentence recommendation

6

should not be accepted. *Rardon II*, ¶ 22. A prosecutor must give more than lip service to the recommendation of the State in a plea agreement. However, there are no hard and fast criteria that define when a prosecutor has merely paid lip service to a plea agreement as opposed to when a prosecutor has fairly presented the State's case. Each case stands or falls on the facts unique to it. *Rardon II*, ¶ 21. Where a PSI contains a recommendation for a different sentence from that in the plea agreement, there is no breach of the plea agreement by the prosecution. *State v. Bowley*, 282 Mont. 298, 311, 938 P.2d 592, 600 (1997) (probation officer recommending a different sentence from that in the plea agreement does not constitute a breach of the plea agreement by the prosecution, because the recommendations of the probation officer and the prosecution are not equivalent).

¶20 Bartosh claims that the transcripts of his telephone conversations were improperly attached to the PSI for the purpose of undermining the plea agreement simply because they "do not paint a very flattering portrait" of him. He further blames the prosecution for allowing the author of the PSI to have access to the transcripts. There is nothing in the record, however, that indicates the State placed the transcripts in its files or otherwise called them to the attention of the PSI author for the purpose of undermining the plea agreement. The probation officer who wrote the PSI had a right to the information. *See* § 46-18-112(2), MCA. Furthermore, the probation officer was required to supply relevant information to the sentencing court. *See* § 46-18-112(1)(a), MCA.

¶21 The sentencing judge, in determining a proper sentence, may consider any relevant evidence relating to the nature and circumstances of the crime, the character of the

7

defendant, the defendant's background and history, mental and physical condition, and any evidence the court considers having probative force. *State v. Mason*, 2003 MT 371, ¶ 23, 319 Mont. 117, ¶ 23, 82 P.3d 903, ¶ 23. This can include information about other acts of a defendant. *Rardon III*, ¶ 17. The District Court did not abuse its discretion in overruling the motion to strike the transcripts of Bartosh's telephone conversations.

¶22   Bartosh further contends that Taylor's testimony undermined the plea agreement by "presenting a rather slanted view" of him. In this instance, the State called Taylor to testify only after Bartosh had testified and after the judge had asked the State about its concerns about Bartosh's answers in the PSI. Taylor's testimony was not aggressively solicited by the prosecution in an attempt to undermine the plea agreement. Rather, Taylor was called as a witness to respond to Bartosh's testimony concerning his compliance with the treatment plan. As noted above, a plea agreement is essentially a contract. Both the State and the defendant must uphold their obligations under the agreement. *See Rardon III*, ¶ 18. Once Bartosh testified as to his conduct concerning compliance with the treatment plan in question, the State was justified in presenting Taylor, who disagreed with him. If a defendant chooses to present information in support of a sentence he argues for, the State may counter with testimony to the effect that such information is misleading or untrue, without breaching a plea agreement. The District Court did not abuse its discretion in overruling Bartosh's objection to Taylor being called as a witness.

¶23   Bartosh also claims for the first time on appeal that the deputy county attorney undermined the plea agreement when she said the State was "not happy" with how he

8

answered the questions in the PSI. We generally do not consider arguments raised for the first time on appeal as it would be unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider. *State v. J.C.*, 2004 MT 75, ¶ 45, 320 Mont. 411, ¶ 45, 87 P.3d 501, ¶ 45; *State v. Martinez,* 2003 MT 65, ¶ 17, 314 Mont. 434, ¶ 17, 67 P.3d 207, ¶ 17. When we consider claims that the prosecutor breached a plea agreement which were not first raised in the trial court, our standard of review is *de novo*. *Rardon II*, ¶ 15. We will consider claimed errors raised for the first time on appeal if they implicate a fundamental constitutional right and if not doing so leaves unsettled the fundamental fairness of the proceeding. *Rardon II*, ¶ 16. The claimed error in this case, however, is insufficient to raise a question concerning the fundamental fairness of the trial court proceeding and we will not consider the matter further.

¶24 Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS