DA 07-0122

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 201

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

DUSTIN DUMONT RAHN,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause Nos. DC 04-157 and 05-1148
Honorable Susan P. Watters, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Jim Wheelis, Chief Appellate Defender; Roberta R. Zenker, Assistant
Appellate Defender, Helena, Montana

        For Appellee:

            Hon. Mike McGrath, Attorney General; Sheri Kathleen Sprigg, Assistant
Attorney General, Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney; Ann Marie McKittrick,
Deputy County Attorney, Billings, Montana

                Submitted on Briefs:  December 6, 2007

                       Decided:  June 10, 2008

Filed:

                         Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1    The Thirteenth Judicial District Court, Yellowstone County, entered judgment against Dustin Dumont Rahn after he pled guilty, pursuant to a plea agreement, to sexual intercourse without consent and tampering with witnesses or informants. Rahn appeals. We reverse and remand.

¶2    The dispositive issue is whether the District Court abused its discretion in ruling the State of Montana did not breach the plea agreement.

BACKGROUND

¶3    In February of 2004, the State charged Rahn with sexual intercourse without consent and felony intimidation. Several months later, Rahn and the State agreed that he would participate in sexual offender treatment through a diversion agreement filed with the District Court, and Rahn waived his right to speedy trial. The court continued Rahn's trial date on that basis.

¶4    In December of 2005, the State filed a Notice of Intent to Prosecute the original charges based on Rahn's failure to complete the terms and conditions of the diversion agreement and the sexual offender treatment program. The State also filed an Information charging Rahn with another count of sexual intercourse without consent and two counts of tampering with witnesses.

¶5    In September of 2006, Rahn and the State filed a plea agreement covering both criminal cases. Rahn agreed to plead guilty to the 2004 charge of sexual intercourse without consent and one count of tampering with witnesses, and the State agreed to dismiss the

charges of felony intimidation, the 2005 sexual intercourse without consent charge and one count of tampering with witnesses. In addition, the State agreed, with regard to the sexual intercourse without consent charge,

> to recommend a sentence of twenty years to Montana State Prison, with ten of those years to be suspended. The State will further argue that Mr. Rahn should not be eligible for parole until he has completed phases 1 and 2 of the Sex Offender Treatment Program. This offer is contingent upon Mr. Rahn being designated a Level 2 or lower by a MSOTA [Montana Sexual Offender Treatment Association] qualified evaluator. If Mr. Rahn is evaluated as a Level 3, then the State will agree to recommend a sentence of 30 years to Montana State Prison with 10 of those years to be suspended, and will further argue that he must complete phases 1 and 2 of the Sex Offender Treatment Program before being considered for parole.

The State also agreed to recommend a concurrent 5-year prison sentence for the tampering with witnesses charge.

¶6     At his sentencing hearing, Rahn presented testimony by MSOTA-certified evaluator Charles I. Newell, who had conducted a sexual offender evaluation of Rahn from July 13 to 18, 2006. Newell opined that Rahn was a "high level 2" offender. Over Rahn's objection that the State was breaching the plea agreement—which the District Court overruled—the State then presented testimony by MSOTA member Michael D. Sullivan. Sullivan testified that he had not evaluated Rahn, but he attacked the validity of Newell's assessment. Sullivan testified that, given the various psychological test scores Newell reported for Rahn, Rahn should be designated a level 3 offender. The State then argued that, if the court designated Rahn as a level 3 offender, it should sentence him to 30 years in prison with 10 years suspended.

¶7     The District Court designated Rahn a Level 3 offender and sentenced him to 30 years

3

in prison with 10 years suspended for sexual intercourse without consent, to run concurrently with 5 years in prison for tampering with witnesses. Rahn appeals.

## STANDARD OF REVIEW

¶8 We review a district court's decision on a claim that the State breached a plea agreement for abuse of discretion. *State v. Bartosh*, 2007 MT 59, ¶ 18, 336 Mont. 212, ¶ 18, 154 P.3d 58, ¶ 18 (citation omitted).

## DISCUSSION

¶9 **Did the District Court abuse its discretion in ruling the State of Montana did not breach the plea agreement?**

¶10 In overruling Rahn's objection to Sullivan's testimony, the District Court said part of its concern was that Newell's report designated Rahn a "high level two offender," and the court did not know what that meant. On that basis, the court said, it was willing to hear evidence to help determine the appropriate designation. The State then presented Sullivan's testimony. Rahn contends the State breached the plea agreement by doing so.

¶11 Designation of sexual offenders in one of three levels is statutory. Before a person convicted of a sexual offense is sentenced, either the Montana Department of Corrections or a sexual offender evaluator must provide the sentencing court with a report recommending one of the following offender designation levels: level 1, when the risk of a repeat sexual offense is low; level 2, when the risk of a repeat sexual offense is moderate; or level 3, when the risk of a repeat sexual offense is high, a threat to public safety exists and the offender is a sexually violent predator. Section 46-23-509(2), MCA. The sentencing court reviews the

4

sexual offender evaluation, any statement by a victim, and any statement by the offender and then designates the defendant as a level 1, 2 or 3 offender. Section 46-23-509(3), MCA.

¶12    We observe that the statutory designation levels do not provide for "high" or other adjectival variations within the three levels. As a result, the portion of Newell's recommendation that Rahn be designated a "high" level 2 offender is outside the statutory scheme.

¶13    As set forth above, the plea agreement between the State and Rahn required Rahn to obtain a sexual offender evaluation from an MSOTA qualified evaluator. Rahn obtained an evaluation from Newell. Newell's evaluation was attached to the presentence investigation report, and Rahn presented Newell as a witness at the sentencing hearing. As stated above, Newell assessed Rahn as a "high level 2" sexual offender.

¶14    In *State v. Rardon*, 2005 MT 129, 327 Mont. 228, 115 P.3d 182 *(Rardon III)*, we pointed out that a plea agreement is a contract between the State and the defendant and, as such, is subject to contract law standards. The State may not retain the benefits of such an agreement while avoiding its obligation thereunder. Indeed, prosecutors must meet "strict and meticulous standards of both promise and performance" in fulfilling such agreements. Where the State has agreed to recommend a sentence in conformity with the recommendation of an MSOTA evaluation, the State is obligated to present its case to the sentencing judge in a way that does not undermine its contractual obligation. *Rardon III*, ¶¶ 18-19 (citations omitted).

¶15    The *Rardon* appeals—*State v. Rardon*, 1999 MT 220, 296 Mont. 19, 986 P.2d 424

(*Rardon I*), *overruled*, *State v. Munoz*, 2001 MT 85, 305 Mont. 139, 23 P.3d 922; *State v. Rardon*, 2002 MT 345, 313 Mont. 321, 61 P.3d 132 (*Rardon II*); and *Rardon III*—are instructive. In *Rardon I*, the State had agreed, pursuant to a plea agreement, to recommend a sentence "in conformity with" recommendations from a Sexual Offender Amenability Evaluation and the presentence investigation, neither of which had yet been performed. The Sexual Offender Amenability Evaluation, when it was completed, recommended outpatient treatment. The presentence investigation recommended 40 years at Montana State Prison with 20 years suspended, and sexual offender treatment. At the sentencing hearing, the State recommended 70 years imprisonment with no parole until Rardon completed sex offender treatment, but at least 30 years in prison. The district court sentenced Rardon to 75 years in prison with 15 years suspended. *Rardon I*, ¶¶ 4-9. On appeal, we held that the district court had abused its discretion in failing to require the State to abide by the terms of the plea agreement, and reversed and remanded for resentencing. *Rardon I*, ¶¶ 17-18.

¶16    At the hearing on resentencing, the prosecutor opined that Rardon deserved a lengthy sentence and, in accordance with the plea agreement, recommended a sentence of 40 years in prison with 20 years suspended, subject to conditions. The prosecutor called the victims to the stand and elicited their opinions that Rardon should be incarcerated for the rest of his life. The district court sentenced Rardon to 75 years in prison with 25 years suspended. *Rardon II*, ¶¶ 10-12. On appeal, we determined that the prosecutor's "fervor" in soliciting and offering evidence from the victims that would almost undoubtedly cause the court to question the propriety of the recommended sentence amounted to a breach of the plea agreement.

6

*Rardon II*, ¶ 22. As a result, we again reversed and remanded for resentencing. *Rardon II*, ¶ 26.

¶17 On resentencing following *Rardon II*, the prosecutor again recommended that Rardon be sentenced to 40 years in prison with 20 years suspended, and again presented the victims as witnesses, but this time did not elicit testimony opposing the State's recommended sentence. The district court did not accept the proffered recommendations, but imposed a 50-year prison sentence with 13 years suspended. *Rardon III*, ¶ 12. On appeal, we noted the absence of hard and fast criteria to apply in determining whether the State has undermined a plea bargain sentence recommendation. We held that, because the prosecutor had not elicited improper testimony or undermined the State's recommended sentence, the prosecutor did not breach the plea agreement. *Rardon III*, ¶¶ 20-21.

¶18 We recently reaffirmed that "[i]t is unacceptable for a prosecutor to present information and to aggressively solicit testimony that is clearly intended to undermine the plea agreement and to convince the sentencing court that a plea bargained sentence recommendation should not be accepted." *Bartosh*, ¶ 19 (citation omitted). We determined, however, that the prosecutor had not breached the plea agreement because the prosecutor was not responsible for the inclusion in the presentence investigation report of certain objectionable telephone conversation transcripts. *Bartosh*, ¶ 20.

¶19 The agreement in the present case is clear and unambiguous. Rahn performed his obligations thereunder. He pled guilty to the 2004 charge of sexual intercourse without consent and one count of tampering with witnesses. An MSOTA qualified evaluator

recommended a designation as a level 2 sexual offender. The plea agreement provided that, upon such a designation, the State would recommend a sentence of 20 years to Montana State Prison with 10 of those years suspended, and no parole eligibility until Rahn had completed phases 1 and 2 of the Sex Offender Treatment Program. At the sentencing hearing, the State called witness Sullivan to support a higher sexual offender designation and a longer sentence. Clearly, Sullivan's testimony was intended to convince the District Court that the plea-bargained sentencing recommendation should not be accepted.

¶20 The State's concern, as set forth in a presentence motion asking the District Court's permission to release Newell's report to Sullivan, was that it could not understand why Rahn did not simply obtain an updated evaluation from Sullivan—who had evaluated him in 2004. That claimed concern is, among other things, irrelevant. The plea agreement required Rahn to obtain an evaluation from an MSOTA qualified evaluator, not from a specific examiner. Rahn met his obligations under the plea agreement.

¶21 On appeal, the State contends Rahn breached the plea agreement by submitting a psychosexual evaluation that was "flawed on its face." The State contends that, because Rahn had "already obtained" Newell's "high level 2" evaluation, he breached the implied covenant of good faith and fair dealing by withholding the evaluation for five months.

¶22 The State's argument is raised for the first time on appeal and, as the State is aware, we generally do not consider arguments raised for the first time on appeal. *See e.g. State v. Long*, 2005 MT 130, ¶ 35, 327 Mont. 238, ¶ 35, 113 P.3d 290, ¶ 35 (citation omitted). In the present case, Rahn objected to the State calling Sullivan as a witness on the grounds the State

8

was breaching the plea agreement. The State did not respond with an argument that Rahn was breaching the agreement or an implied covenant thereof. We decline to allow the State to do so for the first time on appeal.

¶23 Rahn complied with the plea agreement. However, the State's conduct in presenting Sullivan's testimony and his recommended level 3 sex offender designation was not what had been agreed upon in the plea agreement and, thus, we conclude the State breached its agreement with Rahn. We hold, therefore, that the District Court abused its discretion in overruling Rahn's objection that the State was breaching the plea agreement. Consequently, we further hold that the District Court abused its discretion in admitting Sullivan's testimony and letter.

¶24 Finally, in the event we reverse the sentence, the State asserts entitlement to an opportunity to demonstrate on remand that specific performance of the plea agreement would result in a miscarriage of justice, based on the same facts and arguments by which it justified Sullivan's letter and testimony. The State relies on *Munoz*, in which defendant Munoz had moved to withdraw his guilty plea following the State's breach of a plea agreement. The district court denied the motion, and Munoz appealed. *Munoz*, ¶¶ 7, 8. The State admitted on appeal that it had breached the plea agreement, but argued the sentencing court—rather than the defendant—should have the right to choose the remedy. *Munoz*, ¶¶ 10, 11. We disagreed. We held the sentencing court could disallow Munoz's choice of remedy only if the State demonstrated by clear and convincing evidence that his choice of remedy would result in a miscarriage of justice. No such showing had been made in that case. *Munoz*, ¶ 38.

9

¶25     In the present case, unlike in *Munoz*, the remedy sought by the defendant is to require the State to make the sentencing recommendation it agreed to, before a new judge, not to withdraw his guilty plea. Allowing the State to make a "miscarriage of justice" argument on remand via Sullivan's letter and testimony—the very evidence by which it breached the plea agreement—would itself be a miscarriage of justice, because it would effectively deny Rahn any remedy for the State's breach.

¶26     Pursuant to *Munoz*, "a non-breaching defendant must be afforded the initial right to choose from available remedies where the State breaches a plea agreement." *Munoz*, ¶ 38. Here, Rahn's choice of remedy is to hold the State to its bargain. On remand, the State's obligation is clear. The plea agreement clearly contemplated either a level 2 or a level 3 designation. Rahn obtained a recommendation for a level 2 designation. The State is obligated to make the corresponding sentencing recommendation contained in the plea agreement.

¶27     Reversed and remanded for resentencing by a different judge consistent with this opinion.

/S/ KARLA M. GRAY

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ BRIAN MORRIS