

DA 07-0396

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 253

JOHN MALDONADO,

        Petitioner and Appellant,

  v.

STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV-02-065
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Jay F. Lansing; Moses and Lansing, P.C., Billings, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General, Sheri K. Sprigg,
Assistant Attorney General, Helena, Montana

          Dennis Paxinos, Yellowstone County Attorney, Mark J. Murphy, Chief
Deputy County Attorney, Billings, Montana

Submitted on Briefs:  May 14, 2008

Decided:  July 22, 2008

Filed:

_____
                   Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 John Maldonado appeals from the order of the District Court for the Thirteenth Judicial District, Yellowstone County, denying his petition for postconviction relief. We affirm.

¶2 We restate the issues on appeal as follows:

1. Did the District Court err in denying postconviction relief on the issue of whether the parties had a plea agreement and what were its terms?

2. Did the District Court err in denying postconviction relief on Maldonado's claim that his plea was not voluntary?

3. Did the District Court err in denying postconviction relief on the issue of whether the State breached the plea agreement?

4. Did the District Court err in denying postconviction relief on the issue of whether defense counsel rendered ineffective assistance of counsel?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On May 6, 1994, the State charged Maldonado, by Information, with one count of attempted deliberate homicide for the May 1, 1994 shooting of Shaun Madden in Billings, Montana. The State then filed an Amended Information charging Maldonado with deliberate homicide after Madden died. Maldonado retained Robert L. Stephens Jr. to represent him in the matter, although L. Sanford Selvey, II later joined Stephens in representing Maldonado. Stephens also represented Maldonado in a federal criminal case in which Maldonado had been charged with several drug related offenses. Maldonado entered into a plea agreement with the federal government and was sentenced to 210

months of imprisonment, which was later reduced to 100 months for assisting and cooperating with the federal government in the narcotics investigation.

¶4 Following Maldonado's arrest on the State criminal charges, the parties began discussions on a possible plea agreement. The day before the scheduled trial date of January 7, 1997, Maldonado filed an "Acknowledgment of Waiver of Rights This is an Alford Plea" ("Acknowledgment"). In summary, the Acknowledgment detailed Maldonado's rights under an *Alford* plea, the maximum sentence he could receive, that his counsel explained the case to him fully and completely, the State's recommendations for a sentence, and the sentence Maldonado would ask the court to impose. The Acknowledgment also addressed the State's purported agreement to not involve itself in parole matters. While Maldonado and both of his counsel signed the Acknowledgment, no representative of the State did so.

¶5 At the change of plea hearing that same day, Maldonado withdrew his guilty plea and then entered an *Alford* Plea to the deliberate homicide charge. After some discussion of the language of the Acknowledgment and Maldonado's understanding of the charges against him, the District Court accepted Maldonado's plea. Approximately three weeks later, the State filed its "Offer of Proof, Statement of Authority and Plea Agreement" ("Offer of Proof"). In it, the State claimed that the plea agreement was limited to four main points: the State's recommended sentence for the deliberate homicide charge, the State's recommended sentence for the use of a weapon enhancement, that Maldonado would likely recommend a lesser sentence, and that Maldonado could withdraw his plea if he received a sentence greater than that recommended by the State.

3

¶6 The District Court sentenced Maldonado to a term of forty years at the Montana State Prison with the sentence set to run concurrently with Maldonado's federal sentence. This was despite the State's recommendation that Maldonado's state sentence run consecutively to the federal sentence. The court also sentenced Maldonado to ten years for the use of a weapon in the commission of the offense, with that sentence set to run consecutively to the sentence for deliberate homicide and concurrently to the federal sentence. Shortly thereafter, Maldonado was returned to federal custody to serve out his federal sentence.

¶7 While still in federal custody in Greenville, Illinois, Maldonado petitioned the Montana Board of Pardons and Parole for a parole hearing. Maldonado was subsequently released from federal custody on May 28, 2002, after completing his federal sentence and transferred to the Montana State Prison to serve his remaining time on the state sentence. The parole board held a hearing on Maldonado's petition on July 29, 2002. Prior to the hearing, former Deputy Yellowstone County Attorney Dale Mrkich sent a letter to the parole board in opposition to Maldonado's possible parole. Three additional letters opposing Maldonado's release were provided to the parole board: one from the Billings Police Department, another from an individual with the Billings Police Department, and one from the Chief Deputy Yellowstone County Attorney, who also testified before a parole board member (who later recused herself from the proceedings). The minutes of the hearing reflect that the Yellowstone County Attorney testified that pursuant to the plea agreement, the County Attorney's office agreed that it would have no involvement in

4

Maldonado's parole matters and the office withdrew the letter of opposition. The board ultimately denied Maldonado's parole request and set its next review for July 2007.

¶8 On January 25, 2002, Maldonado filed a petition for postconviction relief with the District Court. Maldonado alleged that he received ineffective assistance of counsel, that his *Alford* plea was not knowingly, intelligently, or voluntarily given, and that he was twice put in jeopardy. After Maldonado received court appointed counsel, he filed a Motion for Leave to File Amended Petition for Postconviction Relief on February 17, 2004, which the District Court subsequently granted. The amended petition added a claim that the State breached the plea agreement entered into with Maldonado and thereby violated his federal and State constitutional rights when it opposed his parole/pre-release application in 2002. The District Court held a three day evidentiary hearing on Maldonado's amended petition, beginning on June 6, 2006, and heard testimony from several witnesses including both of Maldonado's trial counsel.

¶9 The District Court issued its findings of fact, conclusions of law, and order on May 24, 2007. The court concluded that Maldonado failed to establish that his counsels' performance was deficient. The District Court also concluded that it was not appropriate to address Maldonado's double jeopardy claim in a postconviction relief petition as the claim could have been directly appealed. In regard to the plea agreement, the court concluded that the agreement was limited to capping the incarceration term Maldonado faced on the State charges, allowing Maldonado to argue for a lesser sentence, and allowing Maldonado to withdraw his plea if he received a sentence exceeding the cap. The court also concluded that there was no evidence that the parole board relied on State

5

participation in its parole decision or that Maldonado was prejudiced by State participation. Furthermore, the court found any State participation to be harmless given the additional overwhelming evidence justifying denial of parole. This appeal followed.

**STANDARD OF REVIEW**

¶10 This Court reviews a district court's denial of a postconviction relief petition to determine whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, ¶ 9, 183 P.3d 861, ¶ 9. Ineffective assistance of counsel claims, however, constitute mixed questions of law and fact for which our review is de novo. *Whitlow*, ¶ 9. Additionally, we review a district court's decisions on claims that the State breached a plea agreement for an abuse of discretion. *State v. Bartosh*, 2007 MT 59, ¶ 18, 336 Mont. 212, ¶ 18, 154 P.3d 58, ¶ 18.

**DISCUSSION**

¶11 ***Issue One. Did the District Court err in denying postconviction relief on the issue of whether the parties had a plea agreement and what were its terms?***

¶12 Maldonado contends that the District Court erred when it concluded that the basis of the bargain between the parties was capping Maldonado's length of imprisonment, allowing Maldonado to argue for less time, and allowing Maldonado to withdraw his plea if he received a sentence exceeding the cap. In contrast, Maldonado argues that there was no plea agreement between the parties as the plea agreement did not contain all the material terms.

6

¶13 As a threshold matter, we note that Maldonado has failed to produce the transcript of the postconviction relief evidentiary hearing, despite relying heavily on testimony presented at the hearing in his briefing to the Court. A primarily element of our review of a denial of a postconviction relief petition is determining whether the District Court's findings of fact are clearly erroneous. *See Whitlow*, ¶ 9. "We have repeatedly stated that if an appellant seeks to challenge the sufficiency of the evidence supporting a verdict, the appellant must provide this Court with a trial transcript, sufficient portions of a trial transcript, or a record sufficient to enable this Court to rule upon the issues raised." *Giambra v. Kelsey*, 2007 MT 158, ¶ 35, 338 Mont. 19, ¶ 35, 162 P.3d 134, ¶ 35. Despite the limited record, we will attempt to address Maldonado's arguments regarding the plea agreement beginning with the question of whether the parties ever reached a plea agreement, and if so, what were its terms.

¶14 A plea agreement is a contract between the State and a defendant. *State v. Bartosh*, 2007 MT 59, ¶ 19, 336 Mont. 212, ¶ 19, 154 P.3d 58, ¶ 19. As such, plea agreements are subject to contract law standards. *State v. Rardon*, 2005 MT 129, ¶ 18, 327 Mont. 228, ¶ 18, 115 P.3d 182, ¶ 18. Whether or not a contract exists is a combined issue of law and fact. *Johnston v. Palmer*, 2007 MT 99, ¶ 38, 337 Mont. 101, ¶ 38, 158 P.3d 998, ¶ 38. In order for an offer to mature into a binding contract, both parties must consent to the terms of the contract. *City of Bozeman v. Taylen*, 2007 MT 256, ¶ 19, 339 Mont. 274, ¶ 19, 170 P.3d 939, ¶ 19. Based on the language of the Acknowledgment and the subsequent conduct of the State at the change of plea hearing and Maldonado's parole hearing, we conclude that the parties did have a plea agreement and we agree with the

7

State and the District Court that it was limited to the four terms enumerated by the State plus the State's agreement not to involve itself in parole matters.

¶15 The majority of the Acknowledgment addresses Maldonado's understanding of the charges against him and that he had discussed the *Alford* plea with his attorneys and was making the plea of his own accord. Paragraph 13 addressed the State's recommended sentence. Paragraph 14 described the State's agreement not to involve itself in parole matters. Paragraph 15 detailed that Maldonado reserved the right to ask the District Court to impose a lesser sentence of twenty years with ten years suspended for deliberate homicide and a consecutive sentence of two years for the use of a weapon, with both sentences to run concurrently with his federal sentence. Paragraph 15(c) pointed out that Maldonado would specifically request that these sentences be made concurrent to his federal sentence. Paragraph 17 acknowledged the State's agreement that Maldonado could "withdraw his plea as a matter of law in the event the Court does not abide by the terms of this plea agreement." Paragraph 18 also stated that the County Attorney's office agreed to be bound by the terms and spirit of the agreement, although no representative from the County Attorney's office signed it. The only signers to the Acknowledgment were Maldonado and his co-counsel, Stephens and Selvey.

¶16 The testimony presented at the change of plea hearing held the same day as the signing of the Acknowledgment supports the argument that the plea agreement did not contain all the terms set forth in the Acknowledgment. In reference to the agreed terms of the plea agreement, the prosecutor stated:

8

We agree -- we, the State, agree that we will recommend 40 years on the underlying offense, which is Deliberate Homicide. We will recommend an enhancement for the use of a weapon of 10 years, and we will not exceed that recommendation to this Court.

We understand in contradistinction to the plea agreement procedure statute that the defendant reserves his right to argue for or intends to argue for a lesser sentence, and there is a question about whether it runs concurrently or consecutively with another case and another sentence imposed in federal court.

¶17 That the State only agreed to a few of the points in the Acknowledgment is reinforced by its submission of the Offer of Proof later that month. The State acknowledged that the parties entered into a plea agreement grounded in § 46-12-211, MCA, and listed four paragraphs which it claimed recited the entire agreement between the parties and contained a complete statement of the State's obligations under the Agreement. In summary, the State offered that the four points of agreement were: (1) the parties agreed that the State would recommend a forty year sentence at the Montana State Prison for the felony crime of deliberate homicide, under § 45-5-102(1), MCA; (2) the parties agreed that the State would recommend an additional sentence of ten years at the Montana State Prison for the commission of an offense with a dangerous weapon, under § 46-18-221, MCA, with the sentence to run consecutively to the deliberate homicide sentence; (3) the parties agreed that Maldonado would probably recommend a sentence less than that recommended by the State; and (4) the parties agreed, pursuant to § 46-12-211(4), MCA, that if the court imposed a sentence greater than forty years for the deliberate homicide charge and an enhancement of ten years for the use of a weapon, then the court would afford Maldonado an opportunity to withdraw his guilty plea. In

9

addition, by its own admission at Maldonado's July 29, 2002 parole hearing, the State agreed that it would have no involvement in any parole matters concerning Maldonado.

¶18 We hold that a plea agreement existed between the State and Maldonado and that the District Court did not err in concluding that the scope of the plea agreement was limited to the five terms set forth in ¶ 17, as the parties mutually consented only to these terms. The District Court did not err in denying Maldonado's petition for postconviction relief on the ground the parties had no plea agreement.

¶19 *Issue Two. Did the District Court err in denying postconviction relief on Maldonado's claim that his plea was not voluntary?*

¶20 Although Maldonado maintains that there was no plea agreement, he next argues that the plea agreement between the parties was based on a fundamental mistake or misunderstanding and that he should be paroled as a result. Maldonado claims that the fundamental mistake or misunderstanding stemmed from his being misinformed as to the consequences of the guilty plea. Maldonado is essentially arguing that he should be entitled to withdraw his *Alford* plea. Thus we will analyze Maldonado's claims under our standards for withdrawal of a guilty plea.

¶21 We review a defendant's motion to withdraw a guilty plea to determine if the defendant has shown good cause to withdraw. Section 46-16-105(2), MCA (1995). Our review of whether a plea was entered voluntarily is a mixed question of law and fact, which we review de novo. *State v. McFarlane*, 2008 MT 18, ¶ 8, 341 Mont. 166, ¶ 8, 176 P.3d 1057, ¶ 8. We review the trial court's underlying factual findings to determine

if they are clearly erroneous. *State v. Warclub*, 2005 MT 149, ¶ 23, 327 Mont. 352, ¶ 23, 114 P.3d 254, ¶ 23.

¶22    Under the law in effect at the time Maldonado entered his *Alford* plea, the district court could permit the defendant to withdraw the plea of guilty, at any time before or after judgment, for good cause shown. Section 46-16-105(2), MCA (1995). "Good cause" includes involuntariness of the plea, but may also include other criteria. *McFarlane*, ¶ 11. "The defendant, before entering the plea, must be 'fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel . . . .' " *State v. Muhammad*, 2005 MT 234, ¶ 14, 328 Mont. 397, ¶ 14, 121 P.3d 521, ¶ 14 (quoting *Brady v. United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970)). In determining whether a district court erred in denying a request to withdraw a guilty plea, we have looked to the adequacy of the district court's interrogation at the time of the plea regarding the defendant's understanding of the consequences of the plea. *Warclub*, ¶ 32.

¶23    Maldonado argues that, in light of paragraph 16 of the Acknowledgment, he believed that the District Court could impose either the State's recommended sentence of fifty years consecutive to his federal sentence or his recommended sentence of twenty years with ten suspended concurrent with his federal sentence. Paragraph 16 stated:

> The defendant is aware that all parties to this agreement have made the Court aware of the State's intended sentence recommendation and the defendant's intended sentence recommendation and the Court will either agree with the State or the defense after reviewing the Pre-Sentence Investigation Report and hearing any and all evidence presented by the State and the defendant. The Court will impose a sentence it feels appropriate.

11

¶24 In order to determine whether Maldonado was aware of the direct consequences of entering the plea, *see Warclub*, ¶ 32, the District Court questioned him thoroughly before accepting his guilty plea. In the order denying postconviction relief, the District Court concluded that "[a] review of Maldonado's letters, court documents and Maldonado's testimony shows that he was well aware of the issues involved in his case and that there was no viable issue of incapacity or mental disease on the part of Maldonado." The record before us supports the District Court's conclusion that the plea was entered voluntarily. Furthermore, we note that Maldonado in fact received a concurrent sentence, which was far more favorable then the sentence recommended by the State. Maldonado's argument that he misunderstood the consequences of his guilty plea is unpersuasive.

¶25 Maldonado next contends that he understood that he would be paroled by the State authorities to his federal sentence and that he would never serve any time in the Montana State Prison. Maldonado claims that this was confirmed by an August 6, 1997 letter from Stephens to Maldonado. However, as the State makes clear, the relevant passage of the letter reads "for purposes of serving your sentence, it was contemplated by all parties that the service of your federal sentence would operate as a discharge of any time you would be required to serve at Montana State Prison *for purposes of securing parole eligibility*." (Emphasis added.) Maldonado did in fact become parole eligible in Montana while serving his federal sentence. Maldonado's argument on this point is without merit.

¶26 Maldonado also claimed that as a result of ineffective assistance of counsel, he did not enter a knowing, voluntary, and intelligent *Alford* plea. The "good cause" requirement for withdrawal of a guilty plea is satisfied if a petitioner can satisfy both

12

prongs of the *Strickland* test—deficient performance by counsel and resulting prejudice to the petitioner. *State v. Henderson*, 2004 MT 173, ¶ 17, 322 Mont. 69, ¶ 17, 93 P.3d 1231, ¶ 17. For the reasons discussed in Issue Four, *infra* ¶¶ 32-40, Maldonado lacks good cause to withdraw his guilty plea on the theory of ineffective assistance of counsel.

¶27 We conclude that Maldonado acted voluntarily and has not shown good cause for withdrawing his guilty plea on the grounds of either fundamental mistake or misunderstanding, or ineffective assistance of counsel. We hold that the District Court correctly denied Maldonado's petition for postconviction relief on this ground.

¶28 ***Issue Three. Did the District Court err in denying postconviction relief on the issue of whether the State breached the plea agreement?***

¶29 Notwithstanding his argument that there was no plea agreement between the parties, Maldonado contends that the State breached the agreement in paragraph 14 of the Acknowledgment to not involve itself in any parole matter concerning Maldonado. He claims that the District Court erred in concluding that even if the State's actions violated paragraph 14 of the Acknowledgment, any breach was harmless. We agree with the District Court that the State's actions were harmless.

¶30 Although the parole board did receive a letter from the State opposing Maldonado's release on parole and one board member met with a deputy Yellowstone County attorney, the State withdrew the letter of opposition and the board member who spoke with the deputy county attorney recused herself. Maldonado has failed to present any evidence that the State's actions ever factored into the parole board's determination

or that he was prejudiced in any way. Accordingly, we hold that the District Court did not err in denying Maldonado's petition for postconviction relief on this ground.

¶31 ***Issue Four. Did the District Court err in denying postconviction relief on the issue of whether defense counsel rendered ineffective assistance of counsel?***

¶32 Maldonado argues that the District Court erred in concluding that his counsel did not render ineffective assistance. Maldonado contends that defense counsels' actions were outside of the wide range of professional competent assistance, and that he was prejudiced by counsels' actions. The State responds by arguing that Maldonado has failed to satisfy the burden of showing deficient performance and prejudice. We agree with the State.

¶33 In order to analyze ineffective assistance of counsel claims, we have adopted the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). Under the *Strickland* test, "a defendant must prove (1) that counsel's performance was deficient, and (2) that counsel's deficient performance prejudiced the defense." *Whitlow v. State*, 2008 MT 140, ¶ 10, 343 Mont. 90, ¶ 10, 183 P.3d 861, ¶ 10.

¶34 The primary question under the first prong of the *Strickland* test is "whether counsel's conduct fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *Whitlow*, ¶ 20. However, we " 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and the defendant 'must overcome the presumption that, under the circumstances, the challenged action might be

14

considered sound trial strategy.' " *Whitlow*, ¶ 21 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (internal quotation marks omitted)).

¶35 In order to prevail on an ineffective assistance of counsel claim, the defendant must satisfy both prongs of the *Strickland* test. *DuBray v. State*, 2008 MT 121, ¶ 19, 342 Mont. 520, ¶ 19, 182 P.3d 753, ¶ 19. If an insufficient showing is made regarding one prong, then there is no need to address the other prong. *Adams v. State*, 2007 MT 35, ¶ 22, 336 Mont. 63, ¶ 22, 153 P.3d 601, ¶ 22.

¶36 Maldonado first contends that he received ineffective assistance of counsel regarding the advice and assistance he received and, therefore, he did not enter a knowing, voluntary, and intelligent *Alford* plea. In support of this assertion, Maldonado offers only that he met with Selvey three times after being returned to the Yellowstone County Detention Facility in October 1996. Not only does the limited record before us reveal extensive communications between Maldonado and both Stephens and Selvey in regard to the plea, but even if Maldonado only met with Selvey three times, Maldonado has failed to show how this constituted ineffective assistance. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action might be considered sound trial strategy. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065; *State v. Tennell*, 2007 MT 266, ¶ 16, 339 Mont. 381, ¶ 16, 170 P.3d 965, ¶ 16. We conclude that Maldonado has failed to overcome this presumption.

¶37 Maldonado next claims that he received ineffective assistance of counsel based on his contention that defense counsel informed him that if he entered a guilty plea, he

15

would receive a concurrent sentence and that he could withdraw his plea if he did not receive a concurrent sentence, but that this guarantee was not in the plea agreement. Given that Maldonado received a concurrent sentence, this claim is moot.

¶38 Maldonado then claims that defense counsel informed him that his federal sentence would operate as a discharge of his state sentence and he would not have to serve any prison time at the Montana State Prison. As we concluded in ¶ 25, this argument is without merit and Maldonado has failed to demonstrate that counsels' conduct fell below the objective standard of reasonableness.

¶39 Maldonado lastly claims that he was informed by defense counsel that the State had agreed not to involve itself in any parole matters concerning Maldonado. Given our conclusion in ¶ 17 that the State did in fact agree not to involve itself in parole matters, Maldonado's claim on this point is moot and need not be addressed any further.

¶40 In sum, Maldonado has failed to satisfy the first prong of the *Strickland* test as he has not demonstrated that counsels' conduct fell below an objective standard of reasonableness measured under prevailing professional norms and in light of surrounding circumstances. *See Whitlow*, ¶ 20. We need not address the prejudice prong of the *Strickland* test as Maldonado has failed to satisfy the first prong. *See Adams*, ¶ 22. Accordingly, we hold that the District Court correctly concluded that Maldonado's counsel did not render ineffective assistance of counsel.

**CONCLUSION**

¶41 In conclusion, a plea agreement did exist between the parties but was limited to five key terms. Maldonado has failed to demonstrate ineffective assistance of counsel or

16

that his guilty plea was anything but knowing, intelligent, and voluntary. The District Court did not err in denying Maldonado's petition for postconviction relief.

¶42    Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE