DA 09-0154

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 412N

STATE OF MONTANA,

        Plaintiff and Appellee,

v.

WADE GLEN PETERSEN,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte/Silver Bow, Cause No. DC-2007-150
Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Brad Lee Belke, Attorney at Law, Butte, Montana

            Gregory Jackson, Jackson Law Firm, P.C., Helena, Montana

        For Appellee:

            Hon. Steve Bullock, Montana Attorney General, Sheri K. Sprigg,
Assistant Attorney General, Helena, Montana

            Eileen Joyce, Silver Bow County Attorney, Butte, Montana

Submitted on Briefs:  November 12, 2009

Decided:  December 1, 2009

Filed:

_____
                    Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent.  It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Wade Glen Petersen appeals the decision of the Second Judicial District Court pertaining to a plea agreement negotiated between Petersen and the State following a hit-and-run accident in which Petersen struck 3 14-year-old girls, one of whom died from her injuries.  We affirm.

## ISSUES

¶3      A restatement of the issues on appeal is:

¶4      Did the District Court err when it rejected the negotiated plea agreement after accepting Petersen's guilty pleas?

¶5      Did the District Court improperly participate in the plea negotiation process?

¶6      Did the State breach the plea agreement when the Treasure State Correctional Training Center (Boot Camp) denied admission to Petersen?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7      At approximately midnight on October 28, 2007, Wade Petersen was driving on Blacktail Lane in Butte-Silver Bow County, when he struck 3 juvenile girls who were walking along a path parallel to the road.  After realizing he struck something, he got out

2

of his vehicle and walked to the roadside. At about that time, a second car drove up and stopped. Petersen told the driver he had struck a deer. The driver observed that Petersen was intoxicated and told Petersen to go home. Petersen then left the scene of the accident. The driver of the second vehicle immediately discovered the girls and called for help. All 3 girls were seriously injured, and one of the girls died later that morning as a result of her injuries. Based on information provided by the driver who spoke with Petersen, officers located Petersen shortly after attending to the victims of the accident. Petersen insisted he had hit a deer. Later, he admitted that he never saw a deer and was unsure of what he hit.

¶8     Petersen, after admitting he had been drinking, was arrested and transported to the jail in Butte-Silver Bow County. Petersen claimed that other than a glass of water he had had nothing to drink since the accident. Officers obtained a warrant for a legal blood draw. Petersen's blood was drawn approximately 5 hours after the accident and indicated a blood alcohol content of .06. After learning that one of the girls had died, the State charged Petersen with one count of felony vehicular homicide while under the influence, two counts of felony negligent vehicular assault, and one count of felony hit and run involving death or personal injury. Petersen entered a plea of not guilty on December 6, 2007.

¶9     In late August/early September 2008, the parties entered into substantive plea negotiations. Initially, the State agreed that if Petersen pled guilty to all 4 charges, it would recommend 20 years, 10 years suspended, for the homicide count, and 10 years for each of the remaining counts, all sentences to run concurrently and to be served at the

3

Montana State Prison (MSP). The State also agreed to recommend placement in the Boot Camp, apply no restrictions on Petersen's ownership or use of firearms during his probation or parole, and to recommend suspension of the remainder of the sentence upon completion of the Boot Camp program. Before reducing the agreement to writing, the parties met with presiding Judge Brad Newman, to discuss the proposed agreement. Judge Newman indicated the agreement was appropriate and scheduled a change of plea hearing for October 2, 2008.

¶10 At the October 2 hearing, the District Court accepted Petersen's plea changes, and acknowledged that the "[c]ourt would be bound by the recommendation of the defense and the State concerning sentencing" contained in the "binding plea agreement." The court also informed Petersen that it would order a presentence investigation (PSI) and would review the information in the PSI before sentencing.

¶11 The PSI was subsequently prepared and delivered to the court. In addition, the court was notified that the Boot Camp screening committee had denied Petersen's application for acceptance. A sentencing hearing was held on December 15, 2008. At this hearing, premised upon the PSI and the unavailability of Boot Camp, the court rejected the plea agreement and offered Petersen the opportunity to withdraw his guilty pleas. Petersen's attorney requested a continuance to allow additional time to conduct research and further confer with his client. The hearing was continued until January 21, 2009.

¶12 On January 20, 2009, Petersen filed a Motion to Compel Performance of Plea Agreement. Arguing that the court did not reserve acceptance of the plea agreement

4

pending review of the PSI, Petersen maintained that the court had already accepted the plea agreement and was bound by that acceptance. At the January 21 hearing, the court denied Petersen's motion to compel and explained that it had accepted Petersen's guilty pleas but had reserved acceptance of the agreement until after the PSI had been completed and reviewed. The court further explained that the plea agreement contemplated Petersen's placement in the Boot Camp program. Because the Boot Camp denied Petersen's application to participate in the program, the court observed that the intended sentence under the plea agreement had become a "legal impossibility." It submitted that it was not authorized to accept parts of the plea agreement and reject others; in other words, "a binding plea agreement is not a piecemeal agreement." The District Court also stated that, based on concerns raised in the PSI, the plea agreement's provision allowing Petersen to retain ownership or use of firearms during probation or parole was not appropriate. For these reasons, the District Court rejected the plea agreement. The judge thereafter explained that Petersen had a right to withdraw his guilty pleas. Petersen, however, declined to do so. He averred that his decision was made voluntarily, with assistance of acceptable and competent counsel, and that he was not under the influence of alcohol or drugs.

¶13 The District Court sentenced Petersen to 20 years, 10 years suspended, for the homicide charge, and 10 years for each additional charge, to run concurrently and to be served at MSP. The sentence restricted his ownership or use of firearms during probation or parole. The court also recommended that Petersen reapply to Boot Camp. If he was accepted and successfully completed the program, he could then petition the court to

consider suspending all or part of his remaining term of imprisonment. Petersen appeals. We affirm.

## STANDARD OF REVIEW

¶14 We review a district court's decision on whether a plea agreement was breached for an abuse of discretion. *State v. Rahn*, 2008 MT 201, ¶ 8, 344 Mont. 110, 187 P.3d 622 (citation omitted).

## DISCUSSION

¶15 Petersen argues that the District Court was bound by the terms of the plea agreement at the time it accepted his guilty pleas, and that its subsequent rejection of the sentencing provisions constituted a breach of the plea agreement which could be remedied only by specific performance.

¶16 The procedure for reaching, accepting or rejecting a plea agreement is set forth in § 46-12-211, MCA (2007). Section 46-12-211(2), MCA (2007), provides that once the parties reach an agreement they must disclose it to the court. The court may then accept it, reject it, or defer its decision on acceptance or rejection until it has the opportunity to review a PSI. Petersen claims the court adopted a "hybrid" procedure that was not permissible. He claims that the court "told [him] that if the court accepted his guilty plea, then it would be bound by the plea agreement terms. The court did accept [the] guilty plea and ordered the plea agreement to be filed in the record. However, the court also said that it could reject the recommended sentence in the plea agreement, but, if it did so, it would have to give Mr. Petersen the option of withdrawing his guilty plea."

6

¶17 According to the transcript of the October 2 hearing, the court asked Petersen: "You understand that, by the nature of a binding plea agreement, if you are, in fact, going to plead guilty pursuant to this agreement and the [c]ourt accepts your guilty plea or pleas that the [c]ourt would be bound by the recommendation of the defense and the State concerning sentencing?" After Petersen answered this question affirmatively, the court then stated: "Do you understand that I would order a presentence investigation in this case to look at your background and any other relevant information that I would need prior to sentencing?" Again Petersen answered "Yes," and the court continued, "Do you understand that because it's a binding plea agreement, if the [c]ourt were to reject the recommended sentence in the agreement I would have to notify you of that fact and I would have to give you the opportunity to withdraw your guilty plea or guilty pleas?" Petersen indicated that he understood.

¶18 The court then explained, among other things, what rights Petersen would waive with a guilty plea, and confirmed that Petersen was satisfied with his counsel's performance and that his guilty pleas were voluntarily given. At that time, Petersen changed his plea to guilty on each of the charges and the District Court accepted the pleas and ordered that the plea agreement be filed. Immediately thereafter, counsel for both parties agreed that a PSI would be ordered prior to sentencing.

¶19 While the District Court did not expressly state that it was accepting Petersen's guilty pleas but was deferring acceptance or rejection of the plea agreement until after reviewing the PSI, in light of the lengthy discussion with Petersen and his counsel about the agreement and the PSI, we conclude Petersen was adequately advised that the PSI

could have an impact upon his sentencing. Moreover, at the subsequent hearing at which the court stated it felt compelled to reject the plea agreement, Petersen nonetheless voluntarily decided against withdrawing his plea. Under these circumstances, we cannot conclude the court violated § 46-12-211, MCA (2007).

¶20 Petersen argues in the alternative that the District Court's participation in the plea negotiation process was improper, in that it led Petersen to believe the court agreed to be bound by all the terms of the agreement. He maintains such participation by the court induced him to plead guilty. He asserts that specific performance of the plea agreement is the proper remedy for such improper conduct. Again, we disagree.

¶21 Montana law does not prohibit judicial participation in plea negotiations. *See* Commission Comments to § 46-12-211, MCA (2007) ("The Commission believe[s] that circumstances sometimes warrant judicial participation in such discussions."). *See also State v. Milinovich*, 269 Mont. 68, 72, 887 P.2d 214, 216 (1994). As in *Milinovich*, there is nothing in the record here to establish that Judge Newman improperly inserted himself into the plea negotiations in a manner that induced Petersen to plead guilty under the erroneous notion that the District Court was bound absolutely by the terms of the agreement.

¶22 Lastly, Petersen asserts that the Boot Camp interfered with the plea agreement, putting the State in breach of the plea agreement. This argument is without merit. Under the applicable rules of the Department of Corrections (DOC), a DOC screening committee "shall have the final determination regarding the admission of any candidate to the boot camp program." Admin. R. M. 20.7.110(4). Exercise of this discretion by the

DOC does not put the State in breach of the plea agreement. The State prosecutor complied in full with the plea agreement and there is nothing in the record to indicate that he attempted in any way to undermine it.

¶23 It is appropriate to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2006, which provides for memorandum opinions. It is manifest on the face of the briefs and the record that the appeal is without merit because the issues are clearly controlled by settled Montana law which the court correctly interpreted and there clearly was no abuse of judicial discretion.

¶24 We affirm.

/S/ JOHN WARNER

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART